[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. One Person One Vote v. LaRose*, Slip Opinion No. 2023-Ohio-1992.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-1992

THE STATE EX REL. ONE PERSON ONE VOTE ET AL. *v*. LAROSE, SECY. OF STATE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. One Person One Vote v. LaRose*, Slip Opinion No. 2023-Ohio-1992.]**

*Elections—Mandamus—Writ sought to compel secretary of state to remove proposed constitutional amendment from August 8, 2023 special-election ballot—Writ denied.*

(No. 2023-0630—Submitted May 31, 2023—Decided June 16, 2023.)

IN MANDAMUS.

_____

**Per Curiam Opinion announcing the judgment of the court.**

{¶ 1} Relators, One Person One Vote, Jeniece Brock, Brent Edwards, and Christopher Tavenor, seek a writ of mandamus ordering respondent, Secretary of State Frank LaRose, to remove the proposed constitutional amendment in Amended Substitute Senate Joint Resolution No. 2 ("S.J.R. 2") from the August 8, 2023

special-election ballot.  Because Article XVI, Section 1 of the Ohio Constitution authorizes the General Assembly to prescribe a special election on a specific date by joint resolution, we deny the writ.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Article XVI, Section 1 of the Ohio Constitution

{¶ 2} Article XVI, Section 1 of the Ohio Constitution empowers the General Assembly to submit legislatively proposed constitutional amendments to a vote of the people when three-fifths of both houses of the General Assembly pass a resolution calling for such a vote.  The provision states in part:

> Either branch of the General Assembly may propose amendments to this constitution; and, if the same shall be agreed to by three-fifths of the members elected to each house, such proposed amendments shall be entered on the journals, with the yeas and nays, and shall be filed with the secretary of state at least ninety days before the date of the election at which they are to be submitted to the electors, for their approval or rejection. They shall be submitted on a separate ballot without party designation of any kind, *at either a special or a general election as the General Assembly may prescribe*.

(Emphasis added.)  *Id*.

{¶ 3} This case concerns whether the General Assembly may call for a special election on a legislatively-initiated constitutional amendment on *any* date, or whether it is bound by the statutes establishing when special elections may generally be held.

{¶ 4} The General Assembly recently passed legislation regarding the scheduling of special elections.  The effect of that legislation on the General

Assembly's authority to set a special-election date for a constitutional amendment proposed by a General Assembly resolution is the focus of this case.

**B. House Bill No. 458**

**{¶ 5}** On January 6, 2023, the governor signed 2022 Sub.H.B. No. 458 ("H.B. 458") into law. Effective April 23, 2023, H.B. 458 amended R.C. 3501.01(D) as follows to provide that special elections be held "only" on certain days specified in the statute:

> A special election may be held only on the first Tuesday after the first Monday in May or November, on the first Tuesday after the first Monday in August in accordance with section 3501.022 of the Revised Code, or on the day authorized by a particular municipal or county charter for the holding of a primary election, except that in any year in which a presidential primary election is held, no special election shall be held in May, except as authorized by a municipal or county charter, but may be held on the third Tuesday after the first Monday in March.

H.B. 458 also enacted R.C. 3501.022, a new statute that specifies the types of special elections that can be held in August. That statute provides:

> *A political subdivision or taxing authority* may hold a special election on the first Tuesday after the first Monday in August for an office, question, or issue if the political subdivision is under a fiscal emergency under section 118.03 of the Revised Code, or the taxing authority that is a school district is under a fiscal emergency under division (B) of section 3316.03 of the Revised Code, at the time the

> board of elections certifies the office, question, or issue for placement on the ballot for that special election.

(Emphasis added.) R.C. 3501.022(A). H.B. 458 did not contain a similar provision authorizing an August special election for a *statewide* office, question, or issue. Rather, R.C. 3501.02(E), which was not amended by H.B. 458, remains as follows:

> Proposed constitutional amendments submitted by the general assembly to the voters of the state at large may be submitted *at a special election occurring on the day in any year specified by division (E) of section 3501.01 of the Revised Code for the holding of a primary election*, when a special election on that date is designated by the general assembly in the resolution adopting the proposed constitutional amendment.

(Emphasis added.) In turn, R.C. 3501.01(E) provides that primary elections be held on the first Tuesday after the first Monday in May in non-presidential-election years and on the third Tuesday after the first Monday in March in presidential-election years.

### C. Senate Joint Resolution No. 2

{¶ 6} On May 10, 2023, the General Assembly adopted S.J.R. 2 as a joint resolution of the House of Representatives and Senate. S.J.R. 2 proposes to amend the Ohio Constitution to (1) require a vote of at least 60 percent of Ohio electors to approve any constitutional amendment and (2) modify the procedures for an initiative petition proposing a constitutional amendment. As adopted, S.J.R. 2 calls for a special election to be held on August 8, 2023, "such election being prescribed pursuant to the authority provided by Section 1 of Article XVI of the Constitution

of the State of Ohio" for the purpose of submitting the proposed constitutional amendment to voters.

{¶ 7} On the day of its adoption, the General Assembly filed S.J.R. 2 with the secretary. That same day, the secretary issued Directive 2023-07 to all county boards of elections, instructing them to prepare to hold a special election on August 8. Secretary of State Directive 2023-07, *August 8, 2023 Special Election for Statewide Ballot Issue*, available at https://www.ohiosos.gov/elections/elections-officials/rules/#manual (accessed June 7, 2023) [https://perma.cc/B5BS-QZZR].

### D. Relators File this Action

{¶ 8} Relators commenced this action on May 12 as an expedited election matter under S.Ct.Prac.R. 12.08, invoking this court's original jurisdiction in mandamus under Article IV, Section 2(B)(1)(b) of the Ohio Constitution and as provided in Article XVI, Section 1 of the Ohio Constitution. Relator One Person One Vote, an Ohio corporation, asserts that it is composed of Ohio electors and taxpayers who oppose the constitutional amendment proposed in S.J.R. 2. Relators Brock, Edwards, and Tavenor are Ohio residents and qualified electors who likewise oppose S.J.R. 2's proposed amendment. All relators allege that they will be injured if the proposed amendment is allowed to be submitted to voters at a special election on August 8, because the special-election date will add expense and difficulty to their efforts to motivate voters to turn out in opposition to the proposed amendment.

{¶ 9} Relators allege that the special election scheduled for August 8 violates the Ohio Constitution and Ohio law. They ask this court to issue a writ of mandamus directing the secretary to (1) remove S.J.R. 2 from the August 8 special-election ballot, (2) rescind Directive 2023-07, and (3) instruct the county boards of elections not to proceed with the special election. The secretary timely answered the complaint, and the parties have submitted their evidence and merit briefs under the expedited schedule in S.Ct.Prac.R. 12.08.

## II. ANALYSIS

{¶ 10} To obtain a writ of mandamus, relators must establish a clear legal right to their requested relief, a clear legal duty on the part of the secretary to provide it, and the lack of an adequate remedy in the ordinary course of the law. *See State ex rel. Manley v. Walsh*, 142 Ohio St.3d 384, 2014-Ohio-4563, 31 N.E.3d 608, ¶ 18. Mandamus is an appropriate remedy to compel the secretary to strike from the ballot a constitutional amendment proposed by a joint resolution of the General Assembly. *See State ex rel. Evans v. Blackwell*, 111 Ohio St.3d 437, 2006-Ohio-5439, 857 N.E.2d 88, ¶ 25-26, citing *State ex rel. Minus v. Brown*, 30 Ohio St.2d 75, 283 N.E.2d 131 (1972) and *State ex rel. Roahrig v. Brown*, 30 Ohio St.2d 82, 282 N.E.2d 584 (1972). As to the third element, relators lack an adequate remedy in the ordinary course of law given the proximity of the special election, which is less than two months away. *See State ex rel. Clark v. Twinsburg*, 169 Ohio St.3d 380, 2022-Ohio-3089, 205 N.E.3d 454, ¶ 16.

### A. The Special Election is Authorized by the Ohio Constitution

{¶ 11} Relators argue that since the amendments to the election statutes were enacted in H.B. 458, the General Assembly may call a special election to be held only (1) on the first Tuesday after the first Monday in November, (2) on the first Tuesday after the first Monday in May, or (3) in presidential-election years, on the third Tuesday after the first Monday in March. *See* R.C. 3501.01(D) and 3501.02(E). Relators therefore assert that the August 8 special election called by the General Assembly in S.J.R. 2 is not authorized by law.

{¶ 12} Regardless of what the Revised Code provides with respect to special elections, however, Article XVI, Section 1 of the Ohio Constitution controls the matter before us. That provision authorizes the General Assembly to submit the issue "at either a special or a general election as the General Assembly may prescribe." *Id.*

**{¶ 13}** "In construing our state Constitution, we look first to the text of the document as understood in light of our history and traditions," *State v. Smith*, 162 Ohio St.3d 353, 2020-Ohio-4441, 165 N.E.3d 1123, ¶ 29, so that " '[w]here the meaning of a provision is clear on its face, we will not look beyond the provision in an attempt to divine what the drafters intended it to mean,' " *Toledo City School Dist. Bd. of Edn. v. State Bd. of Edn.*, 146 Ohio St.3d 356, 2016-Ohio-2806, 56 N.E.3d 950, ¶ 16, quoting *State ex rel. Maurer v. Sheward,* 71 Ohio St.3d 513, 520-521, 644 N.E.2d 369 (1994). *See also Cleveland v. State*, 157 Ohio St.3d 330, 2019-Ohio-3820, 136 N.E.3d 466, ¶ 17.

**{¶ 14}** "We give undefined words in the Constitution their usual, normal, or customary meaning." *Cleveland* at ¶ 17, citing *Toledo City School Dist.* at ¶ 16. Article XVI, Section 1 authorizes the General Assembly to "prescribe" a special election on a proposed constitutional amendment without requiring that it do so by statute. What is the meaning of "prescribe?" Article XVI, Section 1 was voted on directly by the people in 1912. This court's role is to view the language as a voter in the 1912 election would have seen it.

> [W]e are guided by the principle that "[t]he Constitution was written to be understood by the voters; its words and phrases were used in their normal and ordinary as distinguished from technical meaning." *United States v. Sprague,* 282 U.S. 716, 731, 51 S.Ct. 220, 75 L.Ed. 640 (1931); *see also Gibbons v. Ogden*, [22. U.S. 1,] 9 Wheat. 1, 188, 6 L.Ed. 23 (1824). Normal meaning may of course include an idiomatic meaning, but it excludes secret or technical meanings that would not have been known to ordinary citizens in the founding generation.

(Second brackets added in *Heller*.) *District of Columbia v. Heller*, 554 U.S. 570, 576-577, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008).

{¶ 15} A contemporary dictionary defined "prescribe" as follows: "Lay down or impose authoritatively." *The Concise Oxford Dictionary of Current English* 650 (1912).

{¶ 16} *Black's Law Dictionary* 933 (2d Ed.1910) contained this definition:

> To direct; define; mark out. In modern statutes relating to matters of an administrative nature, such as procedure, registration, etc., it is usual to indicate in general terms the nature of the proceedings to be adopted, and to leave the details to be *prescribed* or regulated by rules or orders to be made for that purpose in pursuance of an authority contained in the act.

(Emphasis sic.)

{¶ 17} Therefore, the use of the word "prescribe" in Article XVI, Section 1 authorizes the General Assembly to impose or direct a special election in furtherance of a proposed constitutional amendment. It leaves to the General Assembly the details—like the date of the special election—to be established in pursuance of its authority to call for a vote of citizens on the amendment.

{¶ 18} Article XVI, Section 1 imposes no limitation on the General Assembly's ability to call for a special election on a proposed constitutional amendment. In other parts of the Ohio Constitution, when the General Assembly's exercise of a constitutional power requires the action to be taken "by law" (i.e., pursuant to a statute), the constitutional language has so specified. *See, e.g.*, Article II, Section 21 ("The general assembly shall determine, by law, before what authority, and in what manner, the trial of contested elections shall be conducted"); Article II, Section 22 ("No money shall be drawn from the treasury, except in

pursuance of a specific appropriation, made by law"); Article II, Section 27 (election and appointment of certain officers "shall be made in such manner as may be directed by law"); Article XVI, Section 2 (General Assembly's calling of a constitutional convention shall be provided for "by law"); *see also State ex rel. Foreman v. Brown*, 10 Ohio St.2d 139, 141, 226 N.E.2d 116 (1967) (citing numerous constitutional provisions specifying actions to be taken "by law"). And even elsewhere in Article XVI, Section 1, it is specified that certain action be taken "by law," but without the same qualification in the clause providing that the General Assembly may "prescribe" a special election. *See* Article XVI, Section 1 (fifth paragraph) ("The General Assembly shall provide by law for other dissemination of information in order to inform the electors concerning proposed amendments").

**{¶ 19}** This court cannot impose a similar "by law" limitation on the General Assembly's power to prescribe a special election in Article XVI, Section 1 when the constitutional language does not include one. "[A] court cannot read words into a statute but must give effect to the words used." *State ex rel. Butler Twp. Bd. of Trustees v. Montgomery Cty. Bd. of Commrs.*, 124 Ohio St.3d 390, 2010-Ohio-169, 922 N.E.2d 945, ¶ 21; *see also Wilson v. Kasich*, 134 Ohio St.3d 221, 2012-Ohio-5367, 981 N.E.2d 814, ¶ 26 ("we apply the same rules of construction that we apply in construing statutes to interpret the meaning of constitutional provisions"). Accordingly, the General Assembly may prescribe that a special election take place on a certain date specified in the joint resolution itself, as it did here in S.J.R. 2. *See Foreman* at paragraph one of the syllabus.

**{¶ 20}** Despite the language in Article XVI, Section 1, relators argue that the election statutes restricting the date of special elections must govern the submission of the proposed constitutional amendment to the voters. They argue that nothing in Article XVI, Section 1 authorizes the General Assembly "to choose whatever date it wishes for such an election, in violation of the Revised Code." But this argument is contrary to the language used in the Constitution.

**{¶ 21}** Article III, Section 1 and Article XVII, Section 1 of the Ohio Constitution specify exactly when a general election must take place: "the first Tuesday after the first Monday in November." Accordingly, the General Assembly would not be free to prescribe that a general election take place on a certain date if that date is contrary to what is specified in the Constitution. Nonetheless, there is no similar specification in the Constitution about exactly when special elections may take place. Therefore, the General Assembly is acting within constitutional boundaries when it prescribes that a special election take place on a certain date.

**{¶ 22}** Relators also argue that the election statutes in the Revised Code should apply because those statutes are simply the means by which the General Assembly has exercised its Article XVI, Section 1 power to submit a proposed constitutional amendment to the electors. Therefore, according to relators, the General Assembly has chosen to limit by statute its power to "prescribe" a special election on a proposed amendment. And relators posit that the Ohio Constitution does not forbid the General Assembly from prescribing *by statute* the date on which a proposed constitutional amendment is to be submitted to Ohio voters.

**{¶ 23}** But even if relators are correct that the General Assembly *may* prescribe by statute a special election on a constitutional amendment proposed by joint resolution, it is not *required* to do so. Regardless of what the Revised Code may provide for the holding of elections generally, Article XVI, Section 1 of the Ohio Constitution authorizes the General Assembly to call for a special election on a constitutional amendment proposed by a joint resolution and to specify the date of the special election in that joint resolution, subject only to the limitations contained in the constitutional provision itself. *See Foreman*, 10 Ohio St.2d at 141, 226 N.E.2d 116. "The Constitution is the supreme law; it is the expression of the will of the people, subject to amendment only by the people, and neither the Legislature by legislative enactment, nor the courts by judicial interpretation, can repeal or modify such expression or destroy the plain language and meaning of the

10

Constitution, otherwise there would be no purpose in having a Constitution." *Hoffman v. Knollman*, 135 Ohio St. 170, 181, 20 N.E.2d 221 (1939).

{¶ 24} Also in support of this point, relators assert that the joint resolution calling for a special election on August 8, 2023, functionally amends the Revised Code. They point to Article II, Section 15(D) of the Ohio Constitution: "No law shall be * * * amended unless the new act contains * * * the section or sections amended, and the section or sections amended shall be repealed." Accordingly, they argue that the special election must be prescribed by statute. However, the provision of the Constitution that relators cite is a general rule relating to how bills are passed, while Article XVI, Section 1 is a specific provision that authorizes the legislature to call for a special election and specify the date of that special election *by joint resolution.* Under these circumstances, "the specific provision is treated as an exception to the general rule." *See* Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 183 (2012). Thus, even if we were to accept relators' premise, Article XVI, Section 1 would be an exception to the general provision found in Article II, Section 15(D). "[S]pecial [constitutional] provisions relating to a subject will control general provisions in which, but for such special provisions, the subject might be regarded as embraced." *Akron v. Roth*, 88 Ohio St. 456, 461, 103 N.E. 465 (1913); *see also State ex rel. Maxcy v. Saferin*, 155 Ohio St.3d 496, 2018-Ohio-4035, 122 N.E.3d 1165, ¶ 10.

{¶ 25} This understanding of the Constitution is supported by this court's decision in *Foreman.* In *Foreman*, the General Assembly proposed a constitutional amendment by joint resolution, specifically calling for a special election on May 2, 1967. *Foreman* at 139-140. The relators in *Foreman* sought a writ of mandamus ordering the secretary of state to instruct the county boards of elections not to proceed with the special election called for by the General Assembly's joint resolution. *Id.* at 139. Similar to what relators contend here, the *Foreman* relators argued (1) that a special election must be authorized by statute, (2) that no statute

provided for a special election on a proposed constitutional amendment on the date specified by the General Assembly's joint resolution, and (3) that the only statute providing for submission of a constitutional amendment called for such submission at a different election (in that case, a general election). *Id.* at 140-141.

{¶ 26} This court rejected the relators' argument and denied the writ, relying on the language of Article XVI, Section 1 of the Ohio Constitution. "These words clearly authorize the General Assembly to prescribe that an amendment to the Constitution, proposed by the General Assembly pursuant to that section, be submitted at a special election on a certain date." *Id.* at 141. This court observed that Article XVI, Section 1 did not require that the specified action be taken " 'by law,' i.e., by enactment of a statute." *Id.* Absent a constitutional requirement that the General Assembly authorize a special election by statute, this court held that the General Assembly could, consistent with Article XVI, Section 1, "authorize such special election on a certain date by a joint resolution." *Id.*; *see also id.* at paragraph one of the syllabus.

{¶ 27} For these reasons, the August 8, 2023 special election called by the General Assembly in S.J.R. 2 is constitutionally valid. The General Assembly's valid exercise of its constitutional power granted in Article XVI, Section 1 of the Ohio Constitution overrides any election statute that would otherwise prohibit the special election called for in the General Assembly's joint resolution proposing a constitutional amendment for submission to the state's electors.

**B. R.C. 3501.40 Does Not Limit the Secretary's Ability to Conduct an Election Authorized by Article XVI, Section 1 of the Ohio Constitution**

{¶ 28} Relators also argue that the secretary is prohibited under R.C. 3501.40 from conducting the August 8 special election. R.C. 3501.40 states:

Except as permitted under section 161.09 of the Revised Code [emergency postponement of elections], and notwithstanding

12

any other contrary provision of the Revised Code, no public official shall cause an election to be conducted other than in the time, place, and manner prescribed by the Revised Code.

As used in this section, "public official" means any elected or appointed officer, employee, or agent of the state or any political subdivision, board, commission, bureau, or other public body established by law.

{¶ 29} Based on this statute, relators contend that the secretary lacks the power to conduct the August 8 special election. Therefore, notwithstanding what the General Assembly prescribed in S.J.R. 2, relators contend that the secretary cannot proceed with a special election that is not authorized by statute.

{¶ 30} As we have noted above, however, the August 8 special election is *constitutionally* authorized by Article XVI, Section 1 of the Ohio Constitution. The General Assembly may call a special election on a constitutional amendment proposed by joint resolution and may specify a date for the special election in the joint resolution itself. *Foreman*, 10 Ohio St.2d at 141, 226 N.E.2d 116. And when the General Assembly has submitted to the secretary a joint resolution proposing a constitutional amendment, Article XVI, Section 1 contemplates that the secretary place the proposed amendment on the ballot. *See* Article XVI, Section 1 (second and fourth paragraphs), Ohio Constitution (specifying duties of the Ohio Ballot Board and the secretary of state upon the General Assembly's submission of a joint resolution proposing a constitutional amendment).

{¶ 31} Therefore, R.C. 3501.40 cannot restrain the secretary from proceeding with a special election that the General Assembly has validly prescribed under the Ohio Constitution. A statute that conflicts with the General Assembly's constitutional power under Article XVI, Section 1 to authorize a special election on a certain day is unenforceable to prevent the special election. *See Foreman* at 142.

"Constitutional provisions are not the kin of statutes; they are the paramount law of Ohio. Constitutional provisions are superior to statutes because they derive from the people, the fount of all political power, whereas statutes derive from the General Assembly, which has only the authority delegated to it by the people." *Ohio Grocers Assn. v. Levin*, 123 Ohio St.3d 303, 2009-Ohio-4872, 916 N.E.2d 446, ¶ 74 (Pfeifer, J., dissenting); *see also Foreman* at 142; *Marbury v. Madison*, 5 U.S. 137, 177, 2 L.Ed. 60 (1803) ("Certainly all those who have framed written constitutions contemplate them as forming the fundamental and paramount law of the nation, and consequently the theory of every such government must be, that an act of the legislature, repugnant to the constitution, is void").

{¶ 32} Accordingly, relators are not entitled to their requested mandamus relief against the secretary. The special election is authorized by Article XVI, Section 1 of the Ohio Constitution, and the secretary is therefore authorized to proceed with it.

### III. CONCLUSION

{¶ 33} For the foregoing reasons, the August 8, 2023 special election called by the General Assembly in S.J.R. 2 is authorized by Article XVI, Section 1 of the Ohio Constitution. We therefore deny the writ.

Writ denied.

KENNEDY, C.J., and DEWINE and DETERS, JJ., concur.

FISCHER, J., concurs in judgment only.

DONNELLY, J., dissents, with an opinion joined by STEWART and BRUNNER, JJ.

BRUNNER, J., dissents, with an opinion joined by DONNELLY and STEWART, JJ.

_____

**DONNELLY, J., dissenting.**

{¶ 34} Respectfully, I dissent. What happened leading up to this mandamus action did not have to be a big deal. Before last year, this case would have been a nonissue. But at the end of 2022, the General Assembly passed a law that prohibits statewide special elections in August. 2022 Sub.H.B. No. 458. Now it wants to have a statewide special election in August. The General Assembly could have easily made any number of changes to Ohio election laws to allow for its proposed special election. But rather than changing the law, the General Assembly and respondent, Secretary of State Frank LaRose, want to be told that the Ohio Constitution allows the General Assembly to break its own laws. Rather than doing the work themselves, they want this court to fix their mess and do their work for them. Sadly, a majority of this court obliges.

{¶ 35} Together, various provisions in Articles II, V, and XVI of the Ohio Constitution allow the General Assembly to prescribe practically whatever rules it wants regarding how elections are conducted. And the General Assembly has prescribed rules about the dates on which special elections can be held, *see* R.C. 3501.01, the way it normally does—by passing legislation that became law. Even if the lead opinion is correct that Article XVI, Section 1 of the Ohio Constitution does not *require* the General Assembly to prescribe its special-election rules the way it did in R.C. 3501.01, the fact of the matter is that it did. Now it has to follow them.

{¶ 36} Contrary to what the lead opinion states, Article XVI, Section 1 does not give the General Assembly the power to violate the rules that it has prescribed by law, even when it tries to violate them in a formal pronouncement like Amended Substitute Senate Joint Resolution No. 2 ("S.J.R. 2"). Because the secretary of state would have to violate Ohio law to comply with the directive in S.J.R. 2 to present a proposed constitutional amendment at a special election on August 8, 2023, it is the secretary's clear legal duty to strike the proposed constitutional amendment

from the special-election ballot. I would grant the writ of mandamus sought by relators, One Person One Vote, Jeniece Brock, Brent Edwards, and Christopher Tavenor, and I therefore dissent from the majority's refusal to compel the secretary to faithfully execute the laws of Ohio.

**BACKGROUND**

{¶ 37} On May 10, 2023, the Ohio General Assembly filed S.J.R. 2 with the secretary, instructing him to ask the people of Ohio to approve the General Assembly's proposed changes to Articles II and XVI of the Ohio Constitution.

{¶ 38} The proposed changes to Article II, Sections 1b and 1e, and Article XVI, Sections 1 and 3 would, among other things, require a supermajority vote of 60 percent to adopt amendments to the Ohio Constitution. A simple majority of greater than 50 percent has been required for over a century for citizen-initiated proposed amendments, and a simple majority has been required for almost two centuries for legislatively proposed amendments. *See* former Article II, Section 1, Ohio Constitution (1912); former Article XVI, Section 1, Ohio Constitution (1851). The proposed changes to Article II, Section 1g, would significantly increase the burden of gathering the necessary signatures for citizen-initiated proposed amendments to qualify for the ballot, and they would eliminate the possibility of curing certain deficits in signatures.

{¶ 39} In S.J.R. 2, the General Assembly declared that "a special election is hereby called to be held on August 8, 2023" for the purpose of presenting the proposed amendments, and it commanded that the election be "conducted pursuant to all applicable laws." S.J.R. 2 is the very first legislative resolution in the history of the state of Ohio to ask for a statewide election on a constitutional-amendment proposal that is not on the date of a general election in November, or on the same date that is set by statute for primary elections. Though there have been elections on constitutional-amendment proposals in various months throughout Ohio's

16

history,[1] each non-November election occurred on the date reserved for primary elections.[2]

{¶ 40} The secretary argues that the General Assembly's action in S.J.R. 2 is permitted because the framers of the 1912 amendments to the Ohio Constitution intended to arm the General Assembly, through Article XVI, Section 1, with the unrestricted power to call for special elections on its proposed constitutional amendments whenever it desired. In other words, by joint resolution, the General Assembly is attempting to inspire a historically unprecedented impediment to the ability of Ohio citizens to amend their Constitution. To add insult to injury, the General Assembly seeks to do so in August through a historically unprecedented expansion of one of the very same constitutional provisions that it wants to eviscerate.

## ANALYSIS

{¶ 41} The controversy in this case centers on the following language in Article XVI, Section 1 of the Ohio Constitution:

---

1. *See* Am.S.J.R. No. 9, 111 Ohio Laws 537 (August 1926); Am.S.J.R. No. 52, 130 Ohio Laws 1886 (May 1964); Am.S.J.R. No. 1, 130 Ohio Laws, Special Session, 379-380 (May 1965); Am.Sub.H.J.R. No. 22, 132 Ohio Laws, Part II, 2865 (May 1967); Am.Sub.H.J.R. No. 42, 132 Ohio Laws, Part II, 2878 (May 1968); Am.Sub.S.J.R. No. 3, 134 Ohio Laws, Part II, 2488 (May 1972); Am.S.J.R. No. 15, 135 Ohio Laws, Part I, 2022 (May 1974); Am.S.J.R. No. 4, 136 Ohio Laws, Part II, 3957 (June 1976); Am.Sub.H.J.R. No. 12, 137 Ohio Laws, Part II, 4046 (June 1978); Am.H.J.R. No. 42, 138 Ohio Laws, Part II, 4975 (June 1980); Am.Sub.H.J.R. No. 22, 147 Ohio Laws, Part IV, 9020 (May 1998); 2010 Am.S.J.R. No. 8 (May 2010); 2014 S.J.R. No. 6 (May 2014); 2018 Sub.S.J.R. No. 5 (May 2018); *see also* Baldwin's Ohio Revised Code Annotated, *Table of Proposed Amendments to Ohio Constitution*, 651 (2004).

2. The law in effect in 1926 provided for primary elections to be held in August. G.C. 4963; H.B. No. 40, 110 Ohio Laws, 143. As early as 1930, some primaries were to be held in May. *See* G.C. 4785-67, Am.Sub.S.B. No. 2, 113 Ohio Laws 307, 337; *see also* former R.C. 3501.01(E), Am.H.B. 1, 125 Ohio Laws, 7. The date for primary elections was changed to June starting in 1974. Former R.C. 3501.01(E), Am.Sub.H.B. No. 662, 135 Ohio Laws, Part II, 784, 792-793. In 1983, the date was changed back to May. R.C. 3501.01(E), Am.Sub.S.B. No. 213, 140 Ohio Laws, Part II, 630, 637.

> Either branch of the general assembly may propose amendments to this constitution; and, if the same shall be agreed to by three-fifths of the members elected to each house, such proposed amendments shall be entered on the journals, with the yeas and nays, and shall be filed with the secretary of state at least ninety days before the date of the election at which they are to be submitted to the electors, for their approval or rejection. They shall be submitted on a separate ballot without party designation of any kind, at either a special or a general election as the general assembly may prescribe.

{¶ 42} The General Assembly, the secretary of state, and the lead opinion seem to think that there are only two steps in the analysis leading to the General Assembly's power to set the August 2023 election: Step 1, the General Assembly is constitutionally empowered to "prescribe" whether proposed constitutional amendments are presented at special or general elections; Step 2, the General Assembly gets to schedule special elections whenever it wants, even when contrary to the rules it has prescribed by law. Those two short steps seem simple enough. But if you skip a few steps, you can infer the power to do just about anything from the Constitution. A fundamental purpose of the judicial branch is to stop anyone from skipping those steps—particularly branches of the government seeking to increase their power. *See Marbury v. Madison*, 5 U.S. 137, 176, 2 L.Ed. 60 (1803) ("To what purpose are [legislative] powers limited, and to what purpose is that limitation committed to writing, if these limits may, at any time, be passed by those intended to be restrained?"); *Mugler v. Kansas*, 123 U.S. 623, 661, 8 S.Ct. 273, 31 L.Ed. 205 (1887) ("The courts are not bound by mere forms, nor are they to be misled by mere pretenses. They are at liberty, indeed, are under a solemn duty, to

18

look at the substance of things, whenever they enter upon the inquiry whether the legislature has transcended the limits of its authority").

{¶ 43} If we are to serve our purpose as an independent branch of government that interprets the law, we cannot allow this. There are more analytical steps required than the General Assembly and the lead opinion have taken here. The analysis does not begin with Article XVI, and it does not end with a dictionary definition of the word "prescribe." If we follow all of the proper steps to understand the meaning of "prescribe" as well as "special election" in the context of the relevant constitutional provisions and the history of Article XVI, and if we use standard rules of grammar, it is clear that the General Assembly's attempt to prescribe new special-election rules in S.J.R. 2 cannot supersede conflicting rules that it has already prescribed by law.

**Skipped steps: enumerated constitutional powers and restrictions**

{¶ 44} The lead opinion concludes that the General Assembly can violate its own laws through a joint resolution and create ad hoc election dates whenever it has a constitutional amendment burning a hole in its pocket. In doing so, the lead opinion has failed to evaluate the first step in a proper constitutional analysis, which is to consider the source of the General Assembly's power to act in the first place, as well as pertinent restrictions on that power.

{¶ 45} The primary source of the General Assembly's power is Article II, Section 1 of the Ohio Constitution: "The legislative power of the state shall be vested in [the] general assembly." It is a comprehensive power, but the General Assembly's power to legislate is not an unlimited power; it is subordinate to the will of the people of Ohio. *See* Article I, Section 2 ("All political power is inherent in the people"); Article I, Section 20 ("all powers, not herein delegated, remain with the people"); *accord State ex rel. Davis v. Hildebrant*, 94 Ohio St. 154, 114 N.E. 55 (1916), syllabus (the legislative power in Ohio includes "not only the two branches of the general assembly but the popular will as expressed in the

19

referendum provided for in Sections 1 and 1c of Article II of the Ohio Constitution").

{¶ 46} An important restriction on the General Assembly's legislative power is that "[t]he general assembly shall enact no law except by bill." Article II, Section 15(A), Ohio Constitution. The laws that govern the citizens of Ohio cannot come into existence unless the General Assembly complies with the requirements of Article II, Section 15, including the requirement to pass the bill in both houses, to style the law with specific language, to consider the bill for a minimum amount of time in each of the two houses, to limit the bill to one subject, and to officially present the bill to the governor for approval. Article II, Section 15(A) through (E). With some exceptions not relevant to this discussion, a bill does not become law until the governor approves it and files it with the secretary of state. Article II, Section 16, Ohio Constitution.

{¶ 47} Second, we need to consider the basis of the General Assembly's more specific constitutional authority to govern elections and election procedures, as well as the limitations on that authority. The General Assembly has the express power and duty to pass laws governing the election of officials as well as primary elections. *See* Article II, Section 27 ("[t]he election and appointment of all officers * * * shall be made in such manner as may be directed by law"); Article V, Section 7 ("All nominations for elective state, district, county and municipal offices shall be made at direct primary elections or by petition as provided by law").

{¶ 48} The General Assembly's discretion regarding elections is expressly limited by other portions of the Ohio Constitution, particularly its authority regarding the dates on which general elections are held. *See* Article III, Section 1 (elections for state executive officers must be held in November); Article XVII, Section 1 (elections for state and county officers must be held in November of even-numbered years, and elections for all other elected officers must be held in November of odd-numbered years). The General Assembly has provided by law

20

that general elections shall be held in November, R.C. 3501.01(A), in accordance with these constitutional mandates. The General Assembly's actions must also not conflict with other constitutional powers and rights, including those found in Articles V and XVII, which, unlike Article XVI, govern the elective franchise and elections in general.

{¶ 49} Third, we need to consider the General Assembly's ability under the Ohio Constitution to act in certain scenarios without being limited by the formal process required for enacting laws, namely, the General Assembly's ability to conduct certain business by passing joint resolutions. To be clear, resolutions are not bills and they are not law. Joint resolutions are not subject to the scrutiny and formal processes that apply to bills; they are simply filed with the secretary of state without review or approval by the governor. *See* Article II, Section 15(F), Ohio Constitution. Thus, the General Assembly cannot prescribe laws in a joint resolution, and it cannot change laws that have been prescribed by statute. *See* Article II, Section 15, Ohio Constitution; *State ex rel. Atty. Gen. v. Kinney*, 56 Ohio St. 721, 724, 47 N.E. 569 (1897) ("The statute law of the state can neither be repealed nor amended by a joint resolution of the general assembly"). Instead, joint legislative resolutions are generally used under the Ohio Constitution to trigger some other already-existing process. For example, the General Assembly can, by resolution, compel the secretary of state to issue a certificate of election in special cases involving vacancies. Article II, Section 11. The General Assembly can trigger this court's jurisdiction over an allegation that the governor is unable to serve due to disability. Article III, Section 22. In these examples, the General Assembly would be triggering another branch of government to act. And in Article XVI, Section 1 of the Ohio Constitution, the General Assembly can trigger the secretary of state to, in turn, trigger the public to take action by voting on a proposed constitutional amendment.

**{¶ 50}** That brings us to the fourth step, which is the express but very specific power granted to the General Assembly in Article XVI, Section 1 of the Ohio Constitution to propose constitutional amendments by joint resolution. Again, the power to use a joint resolution is not the power to make law. In the context of Article XVI, Section 1, it is the power to ask a question. The General Assembly gets to ask the public, through the secretary of state, "Do you want to make this proposed amendment a part of the Ohio Constitution?" An even more specific power granted to the General Assembly under Article XVI, Section 1 is the power to have the secretary of state submit the proposed constitutional amendment "at either a special or a general election as the general assembly may prescribe." Keeping in mind that the General Assembly derives its power and duty to make rules governing elections from Article II of the Ohio Constitution, we know that the words "may prescribe" in Article XVI, Section 1 do not create or confer the General Assembly's power over election procedures. The words "may prescribe" refer generally to the legislature's Article II election-rulemaking powers and specifically to its choice between two election categories—special or general—in its directive to the secretary of state.

**{¶ 51}** The lead opinion disagrees and supports its position with a couple of context-free dictionary definitions of the word "prescribe." Lead opinion, ¶ 17. The lead opinion concludes that "prescribe" means to "impose or direct." *Id*. at ¶ 17. No kidding. I think we can all agree to that generic understanding of the General Assembly's power of prescription. But the pertinent question the lead opinion is supposed to answer is whether a rule about special elections that the General Assembly prescribed in a joint resolution can prevail over the rules about special elections that it *already prescribed* in a state law. Does the General Assembly's power to "prescribe" in relation to "a special or a general election" in Article XVI, Section 1 pertain to already-existing powers and election procedures, or is it a uniquely derived power to prescribe rules of election procedure that prevail

over all others when it comes to proposing amendments to the Ohio Constitution? The lead opinion infers the latter, but it skips over some context clues to get to its conclusion.

## Skipped clues: plain language

{¶ 52} The plain meaning of "prescribe," when read in the context of the first paragraph of Article XVI, Section 1 of the Ohio Constitution does not mean what the lead opinion contends. When determining the intended meaning behind the words written into a law, we must read the words and phrases in context and construe them "according to the rules of grammar and common usage." *State ex rel. Steele v. Morrissey*, 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 21. We must also "interpret the relevant words not in a vacuum, but with reference to the statutory context, 'structure, history, and purpose.' " *Abramski v. United States*, 573 U.S. 169, 179, 134 S.Ct. 2259, 189 L.Ed.2d 262 (2014), quoting *Maracich v. Spears*, 570 U.S. 48, 76, 133 S.Ct. 2191, 186 L.Ed.2d 275 (2013). To do otherwise leaves the choice of meaning to the personal inclinations of individual justices. Thus, we should look at the term "prescribe" again, but this time within the context of the entire first paragraph of Article XVI, Section 1:

> Either branch of the general assembly may propose amendments to this constitution; and, if the same shall be agreed to by three-fifths of the members elected to each house, such proposed amendments shall be entered on the journals, with the yeas and nays, and shall be filed with the secretary of state at least ninety days before the date of the election at which they are to be submitted to the electors, for their approval or rejection. They shall be submitted on a separate ballot without party designation of any kind, at either a special or a general election as the general assembly may prescribe.

{¶ 53} The lead opinion shifts the context of "prescribe" in the final sentence above by concluding that the "provision authorizes the General Assembly to submit the issue 'at either a special or a general election as the general assembly may prescribe.' " Lead opinion at ¶ 12, quoting Article XVI, Section 1, Ohio Constitution. The actual phrasing of the constitutional language indicates that the secretary of state is the subject of the final sentence, since he is the one submitting the issue to the electors after the General Assembly has filed its proposed amendments with his office. The first half of the sentence is an independent clause that contains the action: submitting issues on a ballot. The secretary does the submitting. The second half of the sentence after the comma is not a statement that can exist on its own, which means it is a dependent clause that exists only to modify or add detail to the first half of the sentence. The second half of the sentence explains *where* the secretary of state submits the ballot: "at" one of two types of elections. Thus, applying standard rules of grammar to Article XVI, Section 1 reveals that the thing the General Assembly prescribes is the secretary's submission of the ballot at one of two possible settings: a special election or a general election.

{¶ 54} Even if we look at the final sentence according to the lead opinion's understanding of grammar, the plain meaning still does not support the lead opinion's conclusion that the General Assembly can create election rules by joint resolution that supersede any rules set by law. The word "prescribe" as used in Article XVI, Section 1 relates to both special and general elections. The General Assembly is categorically forbidden from prescribing, either by law or by joint resolution, that a general election take place on any date it chooses, because doing so would violate Article III, Section 1 and Article XVII, Section 1 of the Ohio Constitution. Given this prohibition, it is clear that the word "prescribe," when referring to "a special or a general election" in Article XVI, Section 1, does not mean "prescribe ad hoc rules regarding the date for a special or a general election."

24

{¶ 55} Because Article XVI, Section 1 lists two options for election categories, one of which has dates that the General Assembly cannot alter, the word "prescribe" indicates that the General Assembly has the power to choose between the two options, but it does not have the power to create new rules for those options. If the lead opinion were correct that the General Assembly has the power to choose *any date it wants* using a joint resolution under Article XVI, then the language would only need to specify that the General Assembly's proposal be submitted "at *an election* as the general assembly may prescribe." The lead opinion's interpretation renders the words "general" and "special" superfluous, contrary to elementary rules of construction. *See Wachendorf v. Shaver*, 149 Ohio St. 231, 78 N.E.2d 370 (1948), paragraph five of the syllabus ("significance and effect should, if possible, be accorded to every word, phrase, sentence and part"); *State ex rel. Myers v. Spencer Twp. Rural School Dist. Bd. of Edn.*, 95 Ohio St. 367, 373, 116 N.E. 516 (1917) ("No part should be treated as superfluous unless that is manifestly required, and the court should avoid that construction which renders a provision meaningless or inoperative").

{¶ 56} It appears that the lead opinion gets out of this dead end by assuming that the meaning of "special election" inherently requires ad hoc rules. From the words "prescribe" and "special election," the lead opinion comes up with the phrase "prescribe that a special election take place on a certain date specified in the joint resolution itself." Lead opinion at ¶ 19. Of course, this language does not appear in Article XVI, although it is necessary to the lead opinion's conclusion. Strangely enough, the lead opinion recites its conjectured extra language immediately after it lectures that we must not " 'read words into' " the provision and should instead " 'give effect to the words used.' " Lead opinion at ¶ 19, quoting S*tate ex rel. Butler Twp. Bd. of Trustees v. Montgomery Cty. Bd. of Commrs.*, 124 Ohio St.3d 390, 2010-Ohio-169, 922 N.E.2d 945, ¶ 21. With nothing in the plain language of the

constitutional provision to support its added verbiage, the lead opinion creates rather than interprets the law.

{¶ 57} To its credit, the lead opinion correctly notes: " 'In construing our state Constitution, we look first to the text of the document as understood in light of our history and traditions.' " Lead opinion at ¶ 13, quoting *State v. Smith*, 162 Ohio St.3d 353, 2020-Ohio-4441, 165 N.E.3d 1123, ¶ 29. However, the lead opinion does not actually perform this first step, apart from looking up the word "prescribe" in a couple of old dictionaries. Understanding the meaning of a word or phrase in a venerable text sometimes requires "recourse to something more than the pages of a dictionary. The word to be defined, in common with words generally, will have a color and a content that will vary with the setting." *Hawks v. Hamill*, 288 U.S. 52, 57, 53 S.Ct. 240, 77 L.Ed. 610 (1933). We need to go over some more skipped steps, then, and read the text in light of our history and traditions, particularly the framers' intent regarding Article XVI, Section 1, and the meaning of a "special election." With that necessary context, this court can understand the meaning of "may prescribe" in relation to "either a special or a general election."

### Skipped steps: the framers' intent

{¶ 58} The disputed language in Article XVI, Section 1 of the Ohio Constitution first appeared in the document in 1913. A bit of history reveals that the purpose of changing the rules regarding the General Assembly's power to propose constitutional amendments in Article XVI, Section 1 was directed against concerns at the time about the difficulty of passing proposed amendments rather than any concerns about the specific timing of elections at which those proposals would be considered.

{¶ 59} Constitutional scholar and judge Thomas Cooley once wrote that "[e]very constitution has a history of its own which is likely to be more or less peculiar; and unless interpreted in the light of this history is liable to be made to express purposes which were never within the minds of the people in agreeing to

26

it." *People v. Harding*, 53 Mich. 481, 485, 19 N.W. 155 (1884). Part of the peculiar history of Ohio is that it was notoriously difficult to amend the Ohio Constitution in the 1800s and leading up to the 1912 Constitutional Convention. 2 *Proceedings and Debates of the Constitutional Convention of the State of Ohio* 1371 (1912) ("It was a mistake in the framers of the constitution of 1851, that they made that constitution too difficult to amend, and we have had to resort to various devices to get it amended").

{¶ 60} In 1851, Article XVI, Section 1 of the Ohio Constitution provided the following:

> Either branch of the general assembly may propose amendments to this constitution; and, if the same shall be agreed to, by three-fifths of the members elected to each house, such proposed amendments * * * shall be published in at least one newspaper in each county of the state, where a newspaper is published, for six months preceding the next election for senators and representatives, at which time the same shall be submitted to the electors, for their approval or rejection; and if a *majority of the electors, voting at such election*, shall adopt such amendments, the same shall become a part of the constitution.

(Emphasis added). The General Assembly had the same ability to propose amendments to the Constitution through joint resolution that it has today, but the subsequent procedures were challenging. In particular, a majority of all of the people who voted at the election had to vote to approve the amendment in order for it to pass. *See State ex rel. Sheets v. Laylin*, 68 Ohio St. 1, 68 N.E. 574 (1903). At a general election, that meant that "every blank [was] counted [as] a negative vote."

1 *Proceedings and Debates of the Constitutional Convention of the State of Ohio* 651 (1912). However, such was not the case at a "special election." *Id.*

{¶ 61} Because voters are not required to vote on every single candidate and issue presented in a general election, the voters' failure to vote on down-ballot issues was easily fatal to proposed constitutional amendments prior to 1912. *See* 2 *Proceedings and Debates of the Constitutional Convention of the State of Ohio* 1366 (1912) (describing amendments proposed in 1908 that were overwhelmingly approved by those who voted on the issues, but nonetheless failed because they received the votes of only about one-third of all electors). If special elections were held on individual matters, though, there was no risk of abstentions.

{¶ 62} The proposed new language for Article XVI, Section 1 that became part of the Ohio Constitution in 1913 allowed the General Assembly to choose whether the proposed constitutional amendment should be presented at a special election or a general election and also provided that "if a *majority of the electors voting on the same* shall adopt such amendments the same shall become a part of the constitution." (Emphasis added.) *Id.* at 1371. A delegate advocating for the proposed new language explained that the change would bring Ohio in line with the approach adopted by a majority of the other states, which either "provide that a majority voting on the amendment shall make it a part of the constitution" or "provide that an amendment shall be submitted at a separate election, which amounts to the same thing." *Id*. at 1366.

{¶ 63} Thus, the current language in Article XVI, Section 1 was not chosen for the purpose of allowing the legislature to be able to set ad hoc special-election dates whenever it wanted. Instead, the decision to allow the General Assembly the option to use special elections, as well as the decision to change the voting-tabulation language, was intended to combat the effect of vote abstentions and, importantly, to make it *easier* to amend the Ohio Constitution.

**Election law: historical legislative practices and judicial interpretations**

{¶ 64} Undoubtedly, the term "special election" is not defined in the Ohio Constitution. This court has historically referred to the statutory definition of the term in order to derive its meaning, including in the case on which the lead opinion heavily relies: *State ex rel. Foreman v. Brown*, 10 Ohio St.2d 139, 226 N.E.2d 116 (1967).

{¶ 65} When *Foreman* was decided in 1967, the version of R.C. 3501.02(E) that was in effect provided that all proposed constitutional amendments "may" be submitted at a "general election," but the law did not mention special elections. *See Foreman* at 143. The General Assembly proposed constitutional amendments at elections held in May 1964, May 1965, and May 1967. *See* Am.S.J.R. No. 52, 130 Ohio Laws 1886; Am.S.J.R. No. 1, 130 Ohio Laws, Special Session, 379-380; Am.Sub.H.J.R. No. 22, 132 Ohio Laws, Part II, 2865. The third of those three proposed amendments was challenged in *Foreman* as being improperly held at a special election. This court noted that the word "may" in R.C. 3501.02(E) indicated discretion rather than a restriction on the General Assembly's power to call for a special election on its proposed constitutional amendments under Article XVI, Section 1 of the Ohio Constitution. *Foreman* at 142-143.

{¶ 66} In 1968, shortly after *Foreman* was decided, the General Assembly amended R.C. 3501.02(E) and specified that constitutional proposals could occur at the general election in November or at a "special election" occurring in May, which was also when the primary elections were held as provided in R.C. 3501.01(E). *See* Am.H.B. No. 934, 132 Ohio Laws, Part I, 5, 1178-1179. The current version of R.C. 3501.02(E) continues to allow the same choice of submitting constitutional amendments proposed by the General Assembly at a general election or at a special election occurring on the same date as a primary election.

**{¶ 67}** Meanwhile, the statute governing the definition and dates of "special elections," R.C. 3501.01(D), underwent its own changes. From the 1940s to the 1980s, a special election was defined as "any election other than the elections required by law to be regularly held on the day of a general or primary election, provided, however, that a special election may also be held on the day of a general or primary election." Am.Sub.S.B. No. 3, 122 Ohio Laws, 325. In 1981, the General Assembly changed R.C. 3501.01(D) to specify that special elections could be held only in February, March, June, August, and November. Am.Sub.H.B. No. 235, 139 Ohio Laws, Part I, 2112, 2128. In 1983, the General Assembly replaced June with May and eliminated March. Am.S.B. No. 213, 140 Ohio Laws, Part I, 630, 637. In 2015, the General Assembly eliminated February special elections from R.C. 3501.01(D). 2015 Am.Sub.H.B. No. 64. And finally, effective April 7, 2023, *the General Assembly eliminated August special elections* from R.C. 3501.01(D).[3] 2022 Sub.H.B. No. 458. R.C. 3501.01(D) currently provides, with certain exceptions not applicable here, that special elections "may be held *only* * * * in May or November." (Emphasis added.)

**{¶ 68}** The General Assembly's current joint resolution, to the extent that it sets a special-election date that is not provided in R.C. 3501.02(E) and is prohibited by R.C. 3501.01(D), orders the secretary of state to violate special-election

---

3. Despite the unprecedented nature of the General Assembly's current attempt to set an ad hoc special-election date in violation of the law, the General Assembly believes the power to "prescribe" in Article XVI, Section 1 of the Ohio Constitution has always imbued it with the inherent right to do so and that any statute that says otherwise is null and void. So why is the General Assembly, after having removed August from R.C. 3501.01(D) as an option for special elections, choosing August 8 as the special-election date for the constitutional amendments proposed in S.J.R. 2? If, by the lead opinion's interpretation of Article XVI, the General Assembly does not have to follow the law at all, why is it trying to follow its old law governing special elections? If the General Assembly truly has the unfettered power to prescribe special-election rules as the lead opinion apparently believes, the General Assembly could choose to set the special election from midnight to 3:00 a.m. on December 24. The fact that the General Assembly feels compelled to follow its old rules is telling. *See Smiley v. Holm*, 285 U.S. 355, 369, 52 S.Ct. 397, 76 L.Ed. 795 (1932) ("General acquiescence cannot justify departure from the law, but long and continuous interpretation in the course of official action under the law may aid in removing doubts as to its meaning").

requirements that are prescribed by law. Notwithstanding this court's holding in *Foreman* regarding legislative action under Article XVI, Section 1 of the Ohio Constitution in the *absence* of statutory restrictions, this court has held that when a joint resolution regarding a proposed constitutional amendment prescribes an election date that would prevent the secretary of state from complying with statutes governing election procedure, the proposed amendments must be stricken from the ballot. *See State ex rel. Minus v. Brown*, 30 Ohio St.2d 75, 283 N.E.2d 131 (1972).

{¶ 69} In *Minus*, the General Assembly submitted to the secretary of state a joint resolution proposing a constitutional amendment with instructions that the secretary place it on the ballot at the election scheduled for May 2, 1972. *Id.* at 77-78. The General Assembly's submission was so close to the date of the election that it would have prevented the secretary and the county boards of elections from complying with various statutes governing their election duties and procedures.[4] *Id.* at 79. This court held that the General Assembly's power to propose amendments to the Constitution "is not an inherent legislative prerogative—it 'is the exercise of a special power granted to the General Assembly, which must be strictly complied with.' " *Minus* at 79-80, quoting *Leach v. Brown*, 167 Ohio St. 1, 5, 145 N.E.2d 525 (1957). Citing *Foreman*, this court held that when the manner of submitting a joint resolution pursuant to Article XVI, Section 1 would make executive-branch actors unable to comply with applicable election statutes, "it becomes the clear legal duty of the Secretary of State to strike such proposed constitutional amendment from the ballot, and this court will exercise its jurisdiction and allow a writ of mandamus." *Minus* at 81.

{¶ 70} Under the reasoning in *Minus*, the General Assembly's proposed constitutional amendments in S.J.R. 2 should be stricken from the ballot because

---

4. The 1974 amendments to the Ohio Constitution added a requirement in Article XVI, Section 1 that the General Assembly file its proposed constitutional amendments with the secretary of state at least 90 days before the election date.

the General Assembly's directives not only prevent the secretary from complying with the election laws of Ohio but *require* him to violate those laws. In addition to violating the mandates of R.C. 3501.01(D) regarding the dates on which special elections may be held and failing to conform to the special-election dates set forth in R.C. 3501.02(E), the secretary will violate election statutes that are tied to the dates set in R.C. 3501.01(D) and 3501.02(E), such as R.C. 3505.01(A) (certification of ballots by the secretary of state for special elections governed by R.C. 3501.02(E)), R.C. 3509.01 (provision of absentee ballots for special elections governed by R.C. 3501.02(E)), and R.C. 3511.02(A)(2) (application for uniformed services or overseas absentee ballot for special elections governed by R.C. 3501.02(E)).

{¶ 71} The lead opinion does not dispute that the General Assembly will cause the secretary to violate state law by its directive in S.J.R. 2 to set a special election on August 8, 2023, and rather glibly says that the Ohio Constitution authorizes the General Assembly's actions regardless of what the Revised Code requires. Lead opinion at ¶ 30. In other words, without being asked to do so, and without saying they are doing so, the lead opinion declares R.C. 3501.01(D) and all other relevant statutes to be unconstitutional. Again, it ignores some necessary steps to do so.

**Skipped steps: declaring a statute to be unconstitutional.**

{¶ 72} This court must never declare a statute to be actually or hypothetically invalid unless the matter is placed before the court and the unconstitutionality is fully and soundly proven. *Cincinnati, Wilmington, & Zanesville RR. Co. v. Clinton Cty. Commrs.*, 1 Ohio St. 77, 84 (1852). And if the matter is placed before the court, "before any legislative power, as expressed in a statute, can be held invalid, it must appear that such power is clearly denied by some constitutional provision." *Williams v. Scudder*, 102 Ohio St. 305, 307, 131 N.E. 481 (1921).

**{¶ 73}** Because the legislative power in Ohio is vested in the General Assembly, any alleged constitutional prohibition against its ability to enact a particular law "must either be found in express terms, or be clearly inferable, by *necessary implication*, from the language of the instrument, when fairly construed according to its manifest spirit and meaning." (Emphasis sic.) *Lehman v. McBride*, 15 Ohio St. 573, 592 (1863). Thus, if we are to question the constitutionality of R.C. 3501.01(D), we must determine if it either directly conflicts with any express constitutional provisions or if it necessarily frustrates the operability of any express or implied constitutional powers.

**{¶ 74}** The constitutional language at issue, again, is that the General Assembly's joint resolution proposing an amendment to the Ohio Constitution "shall be filed with the secretary of state at least ninety days before the date of the election at which [it is] to be submitted to the electors," and the proposed amendment "shall be submitted on a separate ballot * * * at either a special or a general election as the general assembly may prescribe." Article XVI, Section 1, Ohio Constitution. There is no express limitation on *how* the General Assembly "may prescribe," and given that the legislature's primary role and duty under Article II of the Ohio Constitution is to prescribe rules by law, there is no express or implied constitutional prohibition against prescribing rules that govern "a special or a general election" by law. Although the General Assembly is prohibited from filing its joint resolution fewer than 90 days before an election, there is otherwise no limitation on *when* the General Assembly must prescribe rules that govern special or general elections, and thus, there is no express or implied constitutional prohibition against prescribing its rules well ahead of time by law.

**{¶ 75}** No one has shown or even alleged that the General Assembly is prohibited from regulating the dates of special elections by law.[5] The most generous prohibition we could glean from Article XVI, Section 1 of the Ohio Constitution, and the one gleaned in *Foreman*, is that the General Assembly cannot legislate away its ability to choose between the two options of having its proposed constitutional amendment submitted on a ballot "at either a special or a general election." *Foreman*, 10 Ohio St.2d at 142, 226 N.E.2d 116. The General Assembly's rules in R.C. 3501.01(D) and 3501.02(E) do not legislate away its ability to so choose. Those laws are in fact a proper exercise of the General Assembly's powers derived from Article II *and* contemplated in Article XVI, and those duly enacted laws facilitate the General Assembly's ability to call for special elections under Article XVI, Section 1 in a way that is orderly, transparent, and fiscally responsible.

**{¶ 76}** To the extent that the lead opinion infers that Article XVI, Section 1 *requires* that the General Assembly retain the unfettered discretion to override the law by using a joint resolution in order to set any date that it wants for a special election, the lead opinion's reasoning is plainly erroneous. When a power is not expressly enumerated in the Constitution, we may infer power only to the extent that it is "ancillary or incidental to the power granted." *Marshall v. Gordon*, 243 U.S. 521, 537, 37 S.Ct. 448, 61 L.Ed. 881 (1917); *see also Perrysburg v. Ridgway*, 108 Ohio St. 245, 253-254, 140 N.E. 595 (1923) ("The delegation of political power is either expressed or implied; but it must always be remembered that implied powers delegated must be such as are naturally or necessarily incidental or auxiliary to the express power, and, as such, the implied power cannot be in any wise destructive of, or in conflict with, an express delegation of power").

---

5. Secretary LaRose argues that the term "prescribe" "does not *require* that the General Assembly pass a law," and he does not contend that the term "prescribe" *prohibits* the General Assembly from passing a law. (Emphasis added.)

{¶ 77} The ability to choose absolutely any ad hoc special-election date in a joint resolution is not necessary for the General Assembly to exercise its express power provided in Article XVI, Section 1. Currently enacted law already enables the General Assembly to exercise its power to have its constitutional-amendment proposals placed on the ballot at special elections. Although R.C. 3501.01(D) frustrates the General Assembly's current desire to eviscerate the direct democratic process in Ohio as soon as possible, the law does not conflict with the General Assembly's express or implied powers under Article XVI, Section 1 of the Ohio Constitution. Accordingly, R.C. 3501.01(D) and its related statutes are not unconstitutional.

{¶ 78} The General Assembly cannot repeal or invalidate R.C. 3501.01(D) in S.J.R. 2. *See Kinney*, 56 Ohio St. at 724, 47 N.E. 569; Article II, Section 15, Ohio Constitution. It must conform to the restrictions of R.C. 3501.01(D), even when calling for a special election as contemplated by Article XVI, Section 1 of the Ohio Constitution.

## CONCLUSION

{¶ 79} The General Assembly is not above the laws that its own body has duly enacted. It is constrained by Article II, Section 15 of the Ohio Constitution to amend or repeal laws such as R.C. 3501.01(D) by bill, and it cannot do so by joint resolution. The General Assembly's decision to regulate election procedures by law is not unconstitutional, and its regulation of special elections by law in fact promotes the democratic process and maximizes the chance for elections to truly reflect the will of the people. The General Assembly must now have its proposed amendments put to a vote through the rules it has chosen to prescribe in statutes such as R.C. 3501.01.

{¶ 80} Although the General Assembly may trigger the secretary of state to act through a joint resolution under Article XVI, Section 1 of the Ohio Constitution, the secretary has the duty to faithfully execute the laws of Ohio. *See* Article III,

Section 6, Ohio Constitution. The General Assembly cannot command the secretary of state to violate the laws he is bound to follow. As was the case in *Minus*, S.J.R. 2 orders the secretary to perform acts that violate the law, and it is therefore the secretary's clear legal duty to strike the proposed constitutional amendment from the special-election ballot. I would grant the writ of mandamus. Accordingly, I dissent.

STEWART and BRUNNER, JJ., concur in the foregoing opinion.

_____

**BRUNNER, J., dissenting.**

## INTRODUCTION

{¶ 81} I join Justice Donnelly's dissenting opinion, and I separately dissent to make clear for the members of the majority and the public the long reach of the ramifications of this court's judgment today.

## ANALYSIS

{¶ 82} The lead opinion's latching on to the word "prescribe," as set forth in Article XVI, Section 1 of the Ohio Constitution, is a harmful basis for its decision. Article XVI, Section 1 allows for proposed constitutional amendments that are adopted by a super majority of both chambers of the General Assembly by joint resolution to be placed before the electors of this state.

Either branch of the General Assembly may propose amendments to this constitution; and, if the same shall be agreed to by three-fifths of the members elected to each house, such proposed amendments shall be entered on the journals, with the yeas and nays, and shall be filed with the secretary of state at least ninety days before the date of the election at which they are to be submitted to the electors, for their approval or rejection.

Article XVI, Section 1, Ohio Constitution. Submission of such proposed constitutional amendments must be by "a separate ballot without party designation of any kind, *at either a special or a general election as the General Assembly may prescribe*." (Emphasis added.) *Id.*

{¶ 83} In reaching its decision, the lead opinion defers to the legislature, which determined that its proposed constitutional amendments would be presented at a special election on a date that is specifically *not* authorized by law. *See* R.C. 3501.01(A) and (D), 3501.022, and 3501.40. The lead opinion has allowed for this by finding that the constitutional phrase "at either a special or a general election as the General Assembly may prescribe" means that the legislature, in selecting a special-election date for voting on the proposal, may choose a date that is not authorized by law—i.e., that the General Assembly is not limited to choosing between the current definition of "special election" set forth in R.C. 3501.01(D) and the date of the next general election.

{¶ 84} The verb "prescribe" means "[t]o write or lay down as a rule or direction to be followed; to impose authoritatively; to ordain, decree; to assign." *Oxford English Dictionary*, https://www.oed.com/view/Entry/150644?redirected From=prescribe (accessed May 31, 2023) [https://perma.cc/535V-HVRU]. Yet it does not stand alone in the constitutional text. "Prescribe" relates to the legislature's choice to "submit[] to the electors, for their approval or rejection" the proposed constitutional amendment, "at either a special or a general election." Article XVI, Section 1, Ohio Constitution. Nothing about that text allows the General Assembly to create a new special-election date without regard to other statutory and constitutional election provisions; rather, the text permits the legislature to simply prescribe a choice between "either a special or a general election." *Id.* Were the provision to mean that *any* date could be selected, the phrase "at either a special or a general election" would be mere surplusage and the provision could simply read: "They shall be submitted on a separate ballot without

party designation of any kind, at [an] election as the General Assembly may prescribe." This is not a permissible interpretation. *See Buddenberg v. Weisdack*, 161 Ohio St.3d 160, 2020-Ohio-3832, 161 N.E.3d 603, ¶ 10 (observing that " '[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage,' R.C. 1.42, and the court must give effect to all of the statute's words" [brackets added in *Buddenberg*]); *Centerville v. Knab*, 162 Ohio St.3d 623, 2020-Ohio-5219, 166 N.E.3d 1167, ¶ 22 ("The court generally applies the same rules when construing the Constitution as it does when it construes a statutory provision").

{¶ 85} It is true, as the lead opinion notes, that this court has stated that the language at issue means that "Section 1 of Article XVI empowers the General Assembly to provide for submission of a constitutional amendment, proposed by the General Assembly pursuant to that section, at a special election on a certain day; and the General Assembly may authorize such election by a joint resolution without enacting a statute." *State ex rel. Foreman v. Brown*, 10 Ohio St.2d 139, 226 N.E.2d 116 (1967), paragraph one of the syllabus. We also stated that "if action, taken by the General Assembly pursuant to Section 1 of Article XVI and authorizing a special election on a certain day, does conflict with an unrepealed existing statute, the action so taken pursuant to specific constitutional authority would require a holding that the statute was unconstitutional so far as it conflicted with such action." *Foreman* at 142. *Foreman*, however, was decided at a time when the Revised Code did "not prohibit[] the submission of such a proposed constitutional amendment at a special election." *Id*. at paragraph two of the syllabus. Thus, we also observed, "In the instant case, it is not necessary for us to make such a holding of unconstitutionality because there is no conflict between any statute and the action taken by the General Assembly in Amended Substitute House Joint Resolution No. 22 in calling a special election." *Id*. at 142. But now, Ohio statutory law prohibits August elections. *See* R.C. 3501.01(A) and (D), 3501.022, and 3501.40. In other

words, *Foreman* is not on all fours with the situation in this case; the statement regarding constitutional authority made in *Foreman* was merely dicta.

{¶ 86} Moreover, even if, arguendo, we were to accept the lead opinion's premise that "prescribe" means that the General Assembly may select any date for an election rather than choosing only between "either a special or general election," it still does not follow that the General Assembly's duly enacted statutes forbidding August special elections must yield to a subsequent joint resolution. Constitutional rights and provisions are supreme over statutory provisions; nevertheless, constitutional provisions are not absolute. People have the constitutional right to freedom of speech and assembly, but these rights are subject to reasonable time, place, and manner restrictions. *See Cleveland v. McCardle*, 139 Ohio St.3d 414, 2014-Ohio-2140, 12 N.E.3d 1169, ¶ 10, quoting *Heffron v. Internatl. Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 647, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981) ("even expression 'protected by the First Amendment [is] subject to reasonable time, place, and manner restrictions' " [brackets added in *McCardle*]). People have the right to bear arms, but the United States Supreme Court has routinely made clear that some reasonable restrictions on guns are nevertheless constitutionally permissible. *See, e.g.*, *District of Columbia v. Heller*, 554 U.S. 570, 626-27, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), fn. 26. There is a constitutional right to freedom from bodily restraint, yet we have a vast system of criminal offenses and incarceration. *See Turner v. Rogers*, 564 U.S. 431, 445, 131 S.Ct. 2507, 180 L.Ed.2d 452 (2011). In short, many of our statutory laws burden some constitutional right in some way, and yet they are presumed to be constitutional when enacted and are not struck down unless they are found to have *impermissibly* burdened a constitutional right.

> The question of the constitutionality of every law being first
> determined by the General Assembly, every presumption is in favor

of its constitutionality, and it must clearly appear that the law is in direct conflict with inhibitions of the Constitution before a court will declare it unconstitutional.

*Ohio Pub. Interest Action Group, Inc. v. Pub. Util. Comm.*, 43 Ohio St.2d 175, 331 N.E.2d 730 (1975), paragraph four of the syllabus. Here, there has been no showing that the General Assembly directly violated the Ohio Constitution when it decided to enact statutes forbidding August elections, thereby enshrining the laudable purposes behind those prohibitions—i.e., curtailing elections that are unduly expensive and that result in depressed voter turnout.

{¶ 87} Instead, what the General Assembly has done is ignore the law. This, it cannot do. While the legislature could have repealed the prohibition on August special elections via legislation, it attempted to do so but failed. *See* 2023 Sub.S.B. No. 92 (as introduced) and 2023 H.B. No. 144 (as introduced). That failure speaks volumes. So instead, it simply adopted a joint resolution in direct violation of the law. But we have long held that "[t]he statute law of the state can neither be repealed nor amended by a joint resolution of the general assembly." *State ex rel. Atty. Gen. v. Kinney*, 56 Ohio St. 721, 724, 47 N.E. 569 (1897). Nor is the General Assembly or its members above the law. Legislators, for example, have the constitutional "right to protest against any act, or resolution," Article II, Section 10, Ohio Constitution, but not by setting the capitol building on fire, because arson is prohibited by R.C. 2909.03. Unless the prohibition on August elections is first shown to be unconstitutional, the joint resolution ordering an August special election is an impermissible violation of statute and cannot stand.

{¶ 88} Furthermore, the very section of the Ohio Constitution granting power to the legislature to propose constitutional amendments, Article XVI, Section 1, also provides that "[t]he Supreme Court shall have exclusive, original jurisdiction in all cases challenging the adoption or submission of a proposed

constitutional amendment to the electors," *id.* There is no proviso or presumption that what the legislature proposes to do to the very document to which it and all Ohio elected officials must submit, must be given deference over what the people have reserved to themselves in Article II, Section 1, which states, "The legislative power of the state shall be vested in a general assembly consisting of a senate and house of representatives but the people reserve to themselves the power to propose to the general assembly laws and amendments to the constitution, and to adopt or reject the same at the polls on a referendum vote as hereinafter provided." There is no basis for deferring to the legislature on the question of whether the General Assembly can decree that an election occur on a date that is no longer authorized by statute. And it is this court that is empowered and commanded to make that determination. *See* Article XVI, Section 1, Ohio Constitution.

{¶ 89} The General Assembly has specifically abolished special elections that are held on a date other than the date of a primary election (with minor exceptions not applicable here) via 2022 Sub.H.B. No. 458, which took effect April 23, 2023. The General Assembly's choices are thus limited to deciding whether Amended Substitute Senate Joint Resolution No. 2 ("S.J.R. 2") is to be voted on this November or at a primary election to be held in 2024. S.J.R. 2 prescribes an election date not permitted by statute, and it is our duty to strike from the proposed constitutional amendment that portion of its language that is not authorized by Article XVI, Section 1 or by state law. Our jurisdiction to do this is exclusive and provided by the very section under which the legislature purports to act.

## CONCLUSION

{¶ 90} The judicial power in Ohio is vested in the courts. Article IV, Section 1, Ohio Constitution. Each of the three branches of this state's government is coequal with the others. When out of balance, our very purpose for existing, including the protection of inalienable rights as provided in Article I, Section 1, is ominously undercut, affecting the essential truth that "[a]ll men are, by nature, free

and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety," *id*. A government out of balance, whereby one branch inexplicably and without basis to do so accedes to another—especially in the interpretation of rights reserved to the people—taints the very stewardship to which we, as the people's servants, must give ourselves completely. As the judiciary, we are the institution in which the people have invested the power to carefully determine what is the law for their very benefit. Our judgment is relied on to best understand when we must exercise deference and restraint and when we must step forward to defend individual rights so elemental that they are at the heart of the power most basic to our duty.

{¶ 91} Today, we should be holding that the legislature may not "prescribe" what is not provided by law. We must strike from S.J.R. 2 that provision that sets the date for a "special" election for August 8, 2023, and order the secretary of state to instruct the boards of elections of this state not to hold such an election, as it can neither exist nor proceed under the law of this state. Because the majority does not, I respectfully dissent.

DONNELLY and STEWART, JJ., concur in the foregoing opinion.

————————————

McTigue & Colombo, L.L.C., Donald J. McTigue, J. Corey Colombo, and Katie I. Street; and Elias Law Group, L.L.P., David R. Fox, Emma Olson Sharkey, Jyoti Jasrasaria, and Samuel T. Ward-Packard, for relators.

Dave Yost, Attorney General, and Julie M. Pfeiffer, Amanda L. Narog, Michael A. Walton, Elizabeth H. Smith, and Phillip T. Kelly, Assistant Attorneys General, for respondent.

Zach Klein, Columbus City Attorney, and Richard N. Coglianese and Aaron D. Epstein, Assistant City Attorneys, urging granting of the writ for amicus curiae City of Columbus.

Muskovitz & Lemmerbrock, L.L.C., Susannah Muskovitz, and Thomas M. Steffas, urging granting of the writ for amicus curiae Ohio Federation of Teachers, AFT, AFL-CIO.

ACLU of Ohio Foundation, Amy R. Gilbert, Freda J. Levenson, David J. Carey, and Carlen Zhang-D'Souza, urging granting of the writ for amicus curiae League of Women Voters of Ohio.

Hubay Dougherty, L.L.C., and Trent Dougherty, urging granting of the writ for amicus curiae Ohio Citizen Action.

Brian J. Eastman and Kelly L. Phillips, urging granting of the writ for amicus curiae Ohio Education Association.

O'Connor, Haseley & Wilhelm, L.L.C., and John M. Haseley, urging granting of the writ for amicus curiae We Are Ohio.

The Law Firm of Curt C. Hartman and Curt C. Hartman, urging denial of the writ for amicus curiae Joseph Platt.

————————————