[Cite as *State ex rel. Steen v. Bishop*, 2024-Ohio-1489.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Wade Steen, | : | |
| Relator, | : | |
| | : | No. 23AP-351 |
| v. | : | |
| G. Brent Bishop, Qualitate QUA, | : | (REGULAR CALENDAR) |
| Disputed Board Member State | | |
| Teachers Retirement Board et al., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on April 18, 2024

**On brief:** *The Law Office of Norman A. Abood, Norman A. Abood*, and *Tyler J. Lantzsch*, for relator. **Argued:** *Norman A. Abood.*

**On brief:** *Dave Yost*, Attorney General, and *Perez Morris LLC, Kevin L. Murch*, *Juan Jose Perez*, and *Paul Neel*, for respondent Brian Perera. **Argued:** *Kevin L. Murch.*

IN WRIT OF QUO WARRANTO ON
OBJECTIONS TO THE MAGISTRATE'S DECISION

BOGGS, J.

{¶ 1} Relator, Wade Steen, filed this original action for a writ of quo warranto against respondents, G. Brent Bishop, Mike DeWine (sometimes, "the governor"), and members of the State Teachers Retirement Board (the "board" or "STRS board")—Carol Correthers, Dale Price, Alison Lanza Falls, Rudy H. Fichtenbaum, Steven Foreman, Claudia Herrington, Elizabeth Jones, Arthur Lard, Julie Sellers, and Stephanie K. Siddens. This court has dismissed all named respondents other than Bishop, and as explained below, Brian Perera has been substituted for Bishop as the sole remaining respondent.

{¶ 2} In his complaint, Steen alleged that Bishop "has wrongfully taken and is acting in, the position of the Governor's appointed 'investment expert' to the STRS Board, the public office position to which Mr. Steen is legally entitled and from which Mr. Steen

has been wrongfully removed." (Compl. at ¶ 20.) The crux of Steen's complaint is that Governor DeWine acted without legal authority and contrary to Ohio law by removing him from his position on the STRS board and appointing Bishop as his replacement. *Id.* at ¶ 51-54. In his complaint, Steen sought, in part, an order that Bishop be ousted from the office of the governor's appointed investment expert on the STRS board and that Steen be given immediate possession of that office, with all rights, privileges, and emoluments thereof.

{¶ 3} Steen and Bishop each filed dispositive motions. Steen filed a motion for summary judgment, and Bishop filed a motion for judgment on the pleadings.

{¶ 4} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, the court referred this matter to a magistrate. The magistrate issued a decision on February 6, 2024, including findings of fact and conclusions of law, which is appended hereto. The magistrate recommends that the court grant Steen's motion for summary judgment, deny all other pending motions as moot, and issue a writ of quo warranto.

{¶ 5} The parties agree that, on February 9, 2024, three days after the magistrate issued his decision, Governor DeWine appointed Brian Perera to replace Bishop as the governor's appointed investment expert member on the STRS board. Pursuant to Civ.R. 25(D)(1), Perera is automatically substituted for Bishop as respondent.

{¶ 6} Perera has filed objections to the magistrate's decision, and Steen has responded to those objections. Pursuant to Civ.R. 53(D)(4)(b), we now independently review the magistrate's decision to ascertain whether "the magistrate has properly determined the factual issues and appropriately applied the law."

I.  BACKGROUND

{¶ 7} Perera does not specifically object to the magistrate's findings of fact, and finding no error therein, we adopt those findings as our own. The relevant facts are brief and undisputed. Governor DeWine appointed Steen as an investment expert member of the STRS board pursuant to R.C. 3307.05(C), for a four-year term beginning November 25, 2020 and ending September 27, 2024. On May 5, 2023, Governor DeWine announced he was removing Steen from the board and appointing Bishop to replace him. Steen filed this original action for a writ of quo warranto, challenging Governor DeWine's action, on June 8, 2023.

{¶ 8} Upon consideration of the parties' motions and arguments, the magistrate concluded that, pursuant to R.C. 3307.05(C), the governor has no authority to appoint an

investment expert member to the STRS board for a term of either less than or more than four years; that Steen, having been duly appointed to the STRS board by the governor, was entitled to hold his office for a four-year term, and; that there was no vacancy in the office of the governor's appointed investment expert in May 2023, when Governor DeWine announced he was removing Steen from the office and appointing Bishop to replace him. The magistrate further concluded that the governor lacked statutory, constitutional, or inherent authority to remove Steen from his appointed office. He therefore determined that Steen has shown he is entitled to the appointed office, that Bishop (now, Perera) is unlawfully holding the office, and that Steen is entitled to summary judgment and a writ of quo warranto.

## II.  OBJECTIONS

{¶ 9}   In his objections, Perera maintains that the magistrate wrongly concluded that Steen is entitled to summary judgment. More specifically, he argues that R.C. 3307.05(C) did not entitle Steen to hold his appointed office for four years, that neither R.C. 3307.061 nor Article II, Section 38 of the Ohio Constitution prohibits the governor from revoking Steen's appointment, and that the governor had inherent power, incident to his power of appointment, to remove Steen from office.

## III.  ANALYSIS

{¶ 10} In the conclusion to his objections, Perera asks this court to reject the magistrate's decision in its entirety and to enter judgment in his favor, but nowhere in his objections does he specify any perceived error regarding the magistrate's conclusions of law regarding the requirements for a writ of quo warranto or the standards that govern motions for summary judgment and motions for judgment on the pleadings. Finding no error in those conclusions of law, regarding the applicable legal standards, we adopt them as our own.

{¶ 11} Quo warranto is the exclusive remedy to litigate a person's right to hold a public office. *State ex rel. Ebbing v. Ricketts*, 133 Ohio St.3d 339, 2012-Ohio-4699, ¶ 8. A civil action in quo warranto may be brought in the name of the state "[a]gainst a person who usurps, intrudes into, or unlawfully holds or exercises a public office." R.C. 2733.01(A). "A person claiming to be entitled to a public office unlawfully held and exercised by another may bring an action" for a writ of quo warranto "upon giving security for costs." R.C. 2733.06. To be entitled to the writ, " 'the relator must establish that the office is being

unlawfully held and exercised by respondent and that relator is entitled to the office.' " *Ebbing* at ¶ 8, quoting *State ex rel. Zeigler v. Zumbar*, 129 Ohio St.3d 240, 2011-Ohio-2939, ¶ 23. A writ of quo warranto will issue only when the realtor has demonstrated a clear legal right to the relief requested. *State ex rel. Buian v. Kadlec*, 56 Ohio St.2d 116, 118 (1978).

{¶ 12} The magistrate properly began his analysis by acknowledging that Article III, Section 5 of the Ohio Constitution vests the governor with the supreme executive power of the state. The parties do not dispute that the governor "has the powers necessary to perform the duties specifically required of him by the Constitution and statutes" and that "he is also empowered to act in the interest of the state and in ways not specified, so long as his actions do not contravene the Constitution or violate laws passed by the legislature within its constitutional authority." *State ex rel. AFSCME v. Taft*, 156 Ohio App.3d 37, 2004-Ohio-493, ¶ 49 (3d Dist.), citing *State ex rel. S. Monroe & Son Co. v. Baker*, 112 Ohio St. 356, 371 (1925).

{¶ 13} Article II, Section 27 of the Ohio Constitution directs that "[t]he election and appointment of all officers, and the filling of all vacancies, not otherwise provided for by this constitution, or the constitution of the United States, shall be made in such manner as may be directed by law," i.e., as directed by statute. *See State ex rel. One Person One Vote v. LaRose*, ___ Ohio St.3d ___, 2023-Ohio-1992, ¶ 18. Governor DeWine's authority to appoint an investment expert member to the STRS board arises from R.C. 3307.05(C), and the governor appointed Steen pursuant to that statute. Yet Perera maintains that, "[o]nly by changing what [R.C. 3307.05(C)] plainly states, can the Magistrate conclude that Mr. Steen holds a clear legal right to the office" to which he was appointed. (Objs. to Mag.'s Decision at 8.)

{¶ 14} R.C. 3307.05 sets out requirements for the composition of the STRS board. As relevant here, the board must include "[t]wo members, known as the investment expert members, who shall be appointed for four-year terms." R.C. 3307.05(C). The General Assembly has directed that one investment expert member is to be appointed by the governor, while the other is to be appointed jointly by the speaker of the house of representatives and the president of the senate. *Id*. R.C. 3307.05(C) also addresses what

happens should a vacancy occur in the office of an investment expert member prior to the expiration of a member's four-year term[1]:

> Any investment expert member appointed to fill a vacancy occurring prior to the expiration of the term for which the member's predecessor was appointed shall hold office until the end of such term. The member shall continue in office subsequent to the expiration date of the member's term until the member's successor takes office, or until a period of sixty days has elapsed, whichever occurs first.

*Id.*

{¶ 15} " 'The paramount goal in the interpretation or construction of a statute is to ascertain and give effect to the legislature's intent in enacting the statute.' " *Antoon v. Cleveland Clinic Found.*, 148 Ohio St.3d 483, 2016-Ohio-7432, ¶ 20, quoting *Brooks v. Ohio State Univ.*, 111 Ohio App.3d 342, 349 (10th Dist.1996). To determine legislative intent, we first look to the plain language of the statute, reading the words and phrases in context and according to the rules of grammar and common usage. *Id.*, citing *State ex rel. Burrows v. Indus. Comm.*, 78 Ohio St.3d 78, 81 (1997); R.C. 1.42. When a statutory term is undefined, we give that term its "plain and ordinary meaning." *Rhodes v. New Philadelphia*, 129 Ohio St.3d 304, 2011-Ohio-3279, ¶ 17, citing *Sharp v. Union Carbide Corp.*, 38 Ohio St.3d 69, 70 (1988). When the statutory language is unambiguous, we apply it as written, without resorting to rules of statutory interpretation or considerations of public policy. *Zumwalde v. Madeira & Indian Hill Joint Fire Dist.*, 128 Ohio St.3d 492, 2011-Ohio-1603, ¶ 23-24, 26. With these rules in mind, we turn to the statutory language at issue here.

{¶ 16} We discern no ambiguity in R.C. 3307.05(C), which creates the positions of investment expert STRS board members, defines the terms of those positions, assigns responsibility for filling those positions by appointment, and establishes a rule regarding

---

[1] The magistrate notes that R.C. 3307.061 sets out certain circumstances which may result in a vacancy in the office of an STRS board member. For example, if a board member is convicted of or pleads guilty to one of the criminal offenses listed in R.C. 3307.061(A), the member's office "shall be deemed vacant." Further, a member may deemed to have forfeited his or her office, thus creating a vacancy in that office, if "on complaint and hearing," the member is found to have "willfully and flagrantly exercise[d] authority or power not authorized by law, refuse[d] or willfully neglect[ed] to enforce the law or to perform any official duty imposed by law" or is found "guilty of gross neglect of duty, gross immorality, drunkenness, misfeasance, malfeasance, or nonfeasance." R.C. 3307.061(B). *See also,* Article III, Section 38, Ohio Constitution ("Laws shall be passed providing for the prompt removal from office, upon complaint and hearing, of all officers, including state officers, * * * for any misconduct involving moral turpitude or for other cause provided by law; and this method of removal shall be in addition to impeachment or other method of removal authorized by the constitution."). R.C. 3307.061 does not authorize the governor to remove an appointed investment expert member from office.

replacement of an appointee should a midterm vacancy occur. The statute unambiguously requires that the two investment expert members of the STRS board "be appointed for four-year terms." *Id.* Based on that plain statutory language, we agree with the magistrate's conclusion that, unless appointing a midterm replacement to fill a vacancy in the office, "the governor had no power to make an appointment of an investment expert member to the board for a term of either less than or more than four years." (Mag.'s Decision at 11.)

{¶ 17} In *State ex rel. McCormick v. Raschig*, 147 Ohio St. 522 (1947), the Supreme Court of Ohio held that the governor had no power to appoint a Superintendent of Public Works for a term of either less than or more than one year, when Article VII, Section 12 of the Ohio Constitution provided for a superintendent to be " 'appointed * * * for the term of one year,' " and Section 4040, General Code, provided that the superintendent " 'shall be appointed * * * and shall hold his office for a term of one year.' " *Id.* at 526. Perera contends that *McCormick* is distinguishable from this case and that the magistrate's reliance on it was misplaced, because the statute at issue in *McCormick* states both that the superintendent "shall be appointed" for a one-year term and that the superintendent "shall hold his office" for a one-year term. However, the governor's power of appointment is not impacted by the addition of language that the superintendent "shall hold his office" for a one-year term. When the length of the term is defined by the statute, the governor may not appoint someone for a shorter or longer amount of time. In *McCormick*, the governor had appointed the respondent to the office of superintendent for a defined period of just less than six months; the court held that he lacked the authority to do so, because the constitution and the relevant statute required that the appointment be for one year.

{¶ 18} The terms of office at issue in both *McCormick* and this case are statutorily and/or constitutionally defined as a specific number of years—one year in *McCormick* and four years here. The governor's authority to appoint an investment expert member is as directed by law, *see* Article II, Section 27, Ohio Constitution, and the General Assembly has, within its constitutional authority, defined the length of the appointee's term in R.C. 3307.05(C). In fact, Perera concedes, "the legislature is presumed to have intended that the statutory language requires that when appointing an investment expert to the STRS Board, the term of that appointment will be for four years." (Objs. at 13.) Finding no ambiguity in R.C. 3307.05(C), we agree with the magistrate that the governor has no power to make an appointment for the office of the governor appointed investment expert

member on the STRS board for a term of either less than or more than four years, unless a vacancy arises during an existing four-year term, in which case the governor may appoint a replacement to complete that term.

{¶ 19} Despite R.C. 3307.05(C)'s requirement that the investment expert STRS board members *be appointed* to four-year terms, Perera argues that the statute does not state that an appointee shall *hold* the office for a four-year term. He thus objects to the magistrate's conclusion that Steen was entitled to hold his appointed office for the statutorily defined four-year term. In support of that objection, Perera points to R.C. 3307.05(C)'s use of the phrase "shall be appointed" when referring to the governor's initial appointment of an investment expert member for a full term, but the statute's use of the different phrase "shall hold office" when referring to a replacement, appointed to fill a vacancy in that office. Perera maintains that the magistrate erroneously disregarded that difference in the statutory language.

{¶ 20} According to Perera, the original appointee to the statutorily mandated four-year term of office under R.C. 3307.05(C) has no protected interest in serving out that term, and thus no protection from discretionary removal from office, because R.C. 3307.05(C) does not state that the appointee "shall hold office" for four years. In contrast, he maintains a successor to that office, appointed to fill a midterm vacancy, is entitled to such protection, because the statute states that the successor appointee "shall hold office" for the remainder of the current four-year term. In Perera's view, the successor serves a fixed term (for the remaining duration of the predecessor's statutorily defined term) and cannot be removed at the governor's whim, but the original appointee essentially serves at the governor's pleasure and has no protection—not even basic due process protections—from removal. We reject Perera's argument that R.C. 3307.05(C) compels the conclusion that the General Assembly intended to base an appointee's right to the public office solely on the question of succession and that the legislature intended to bestow greater rights upon a replacement appointee than those enjoyed by his or her predecessor.

{¶ 21} Perera correctly notes that Ohio courts presume that the General Assembly intends different meanings when it uses different language. *See, e.g., Huntington Natl. Bank v. 199 S. Fifth St. Co., LLC*, 10th Dist. No. 10AP-1082, 2011-Ohio-3707, ¶ 18 ("Because the legislature used different language in the first and last sentences of R.C. 2323.13(A), we must assume it intended different results from the different words employed"); *Metro. Sec.*

*Co. v. Warren State Bank*, 117 Ohio St. 69, 76 (1927) ("Having used certain language in the one instance and wholly different language in the other, it will rather be presumed that different results were intended."). Thus, given the General Assembly's use of different language when addressing an initial appointee and a replacement appointee, Perera argues that the phrases "shall be appointed" and "shall hold office" must have different meanings. We agree, to a point. Standing alone, the verb phrases "shall be appointed" and "shall hold office" of course have different meanings; one refers to another's act of appointing the officeholder, while the other refers to the officeholder's time in office. But we may not merely compare the phrases in the abstract, and out of context, as Perera would have us do.

{¶ 22} In arguing that an initial appointee has no entitlement to continue in his appointed office, Perera focuses solely on the phrase "shall be appointed" in the first sentence of R.C. 3307.05(C), divorced from the remainder of the sentence. He argues that the magistrate essentially inserted into the first sentence of R.C. 3307.05(C) the words "shall hold office" to modify the governor's appointment of an investment expert, when those words appear only later in the statute, in relation to a replacement appointee. But by focusing solely on the phase "shall be appointed," Perera improperly ignores and excises from the statute what the appointee is appointed *to*—a "four-year term[]." *Id.*

{¶ 23} It is well-settled that all the words the General Assembly has chosen to include in a statute "should have effect," and we may not disregard any part of the statute. *D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health*, 96 Ohio St.3d 250, 2002-Ohio-4172, ¶ 19. "Term of office" is generally defined as "[t]he period during which an elected officer or appointee may hold office, perform its functions, and enjoy its privileges and emoluments." *Black's Law Dictionary* 1700 (10th Ed.2014). By defining the term of office of an investment expert STRS board member as four years, the plain language of the statute suggests that, upon appointment by either the governor or the president of the senate and the speaker of the house of representatives, the appointee is intended to hold office, perform its functions, and enjoy its privileges and emoluments for four years.

{¶ 24} We must also consider the statutory language in context. *State ex rel. Steele v. Morrissey*, 103 Ohio St.3d 355, 2004-Ohio-4960, ¶ 21; R.C. 1.42. The relevant sentences in R.C. 3307.05(C) upon which Perera relies address different circumstances— appointment to a full four-year term and appointment of a replacement to finish out that term—which themselves justify the use of different language. The General Assembly could

have expressly stated in the first sentence of R.C. 3307.05(C) that the investment expert members "shall be appointed *and shall hold office* for four-year terms," but the import of the italicized language is implicit in the appointment to a defined term of office. The same, however, cannot be said with respect to the appointment of a replacement investment expert STRS board member; without further direction, appointment would again be for a four-year term, as the statute otherwise only permits appointment for a four-year term. The General Assembly used different language to clarify that the replacement appointee is *not* appointed to a new four-year term but is, instead, appointed only to complete the predecessor's term.

{¶ 25} The language regarding the duration of a replacement appointee's service is inextricably linked to the four-year term defined in the first sentence of R.C. 3307.05(C) and reinforces the import of the General Assembly's establishment of four-year terms of office for the investment expert members of the STRS board. The magistrate's conclusion that Steen was entitled to hold his appointed office for the statutorily defined four-year term (unless the office was first deemed vacant) does not fail to afford different meaning to different language used in different parts of R.C. 3307.05(C). Nor did the magistrate insert additional language into the first sentence of R.C. 3307.05(C) to reach that conclusion.

{¶ 26} Perera next contends that the governor has inherent authority to remove and replace a duly appointed investment expert STRS board member at will, without regard to the statutorily defined term of office, in part because the power to remove an appointee is incident to the power to make the appointment. The magistrate acknowledged the general, default rule that the power of removal is incident to the power of appointment, but he concluded that the general rule applies only when " 'the term[] or tenure of a public officer is not fixed by law, and the removal is not governed by constitutional or statutory provision.' " *Davidson v. Sheffield-Sheffield Lake Bd. of Edn.*, 9th Dist. No. 89CA004624, 1990 Ohio App. LEXIS 2190, *8 (May 23, 1990), quoting 43 American Jurisprudence, 31, Section 183 (" 'Inasmuch as the tenure has not been declared by law, the office is held during the pleasure of the authority making the appointment.' "). Because R.C. 3307.05(C) defines the term of office of an investment expert member of the STRS board,[2] and the Revised Code sets out means for removing an appointed investment expert member from office,

---

[2] Contrary to Perera's suggestion, the mere possibility that an appointee could be removed from office prior to the end of the appointee's term for cause under R.C. 3307.061 does not require the conclusion that the term of office is not defined or fixed by law.

*see, e.g.,* R.C. 3305.061, we agree with the magistrate that the general rule wrapping the power of removal into the power of appointment does not apply here. *See* 2014 Ohio Atty.Gen.Ops. No. 2014-127, 2014 Ohio AG LEXIS 16 (Apr. 11, 2014) (rejecting application of the default rule when members of a board of trustees of a school district free public library were appointed to defined seven-year terms, subject to removal for cause).

{¶ 27} We do not accept the essential thrust of Perera's argument—that the governor's appointed investment expert STRS board member serves at the pleasure of the governor, who retains the unilateral authority to remove the member at will. The General Assembly plainly knows how to designate an appointed public officer as serving at the pleasure of the governor; it has expressly done so in a variety of contexts. *See, e.g.*, R.C. 121.03 (naming 24 administrative department heads that "shall be appointed by the governor with the advice and consent of the senate, and shall hold their offices during the term of the appointing governor, and are subject to removal at the pleasure of the governor"); R.C. 3333.01(B) ("The governor, with the advice and consent of the senate, shall appoint the chancellor of higher education. The chancellor shall serve at the pleasure of the governor"); R.C. 3304.15(B) ("The governor shall appoint an executive director of the opportunities for Ohioans with disabilities agency to serve at the pleasure of the governor"); R.C. 4901.021(9) through (11) (authorizing the governor to appoint three members of the Public Utilities Commission Nominating Council, each of whom is "to serve at the pleasure of the governor"); R.C. 6301.04(B) ("The governor shall appoint members to the [state workforce policy] board, who serve at the governor's pleasure"). The absence of similar language in R.C. 3307.05(C) suggests that the General Assembly did *not* intend the governor to have unbridled power to remove and replace an investment expert board member at will. *See State ex rel. CNN, Inc. v. Bellbrook-Sugarcreek Local Schools*, 163 Ohio St.3d 314, 2020-Ohio-5149, ¶ 47 (legislature knew how to limit access to student records that pertain to a person who has been in attendance, yet chose to use only present-tense limiting language when enacting the release of records statute to those concerning "any student attending a public school"); *Lake Shore Elec. Ry. Co. v. Pub. Util. Comm. of Ohio*, 115 Ohio St. 311, 319 (1926) (had the legislature intended a particular meaning, "it would not have been difficult to find language which would express that purpose," having used that language elsewhere). The General Assembly could have made the governor's appointed investment expert STRS board member's term subject to the governor's

pleasure, but it did not. Instead, it expressly defined the term of an investment expert board member as four years. We may not by judicial fiat add language to the statute to accomplish a result at odds with the statutory language employed. *See Hulsmeyer v. Hospice of Southwest Ohio, Inc.*, 142 Ohio St.3d 236, 2014-Ohio-5511, ¶ 26.

{¶ 28} Perera's suggestion that the governor has inherent authority to unilaterally remove an investment expert STRS board member would also lead to absurd results. If, for example, the governor prefers to appoint investment experts for two years, instead of for the four years the General Assembly has mandated, the governor could appoint an investment expert member (by all appearances to a four-year term), but then remove that member after two years and replace him with a new investment expert member to serve the remaining two years, thereby unilaterally contravening the statutorily expressed will of the General Assembly. We cannot condone a reading of the statute that is not only unsupported by the plain and unambiguous statutory language, but that also gives rise to an absurd result. *See State ex rel. Clay v. Cuyahoga Cty. Med. Examiner's Office*, 152 Ohio St.3d 163, 2017-Ohio-8714, ¶ 22 (noting a "guiding principle of statutory construction: that when the General Assembly enacts a statute, it does not intend to produce an absurd result").

{¶ 29} For these reasons, we overrule Perera's objections to the magistrate's decision. Nevertheless, we modify the magistrate's decision in one respect. In framing the issue for review, the magistrate stated, "Given the lack of any express statutory or Constitutional authority granting or denying DeWine the power to remove an investment expert member he appointed to the investment board prior to the expiration of the investment expert member's statutory four-year term, does DeWine have the inherent authority to do so?" (Mag.'s Decision at 9.) Although we agree with the magistrate that there is no statutory or constitutional authority granting Governor DeWine the authority to remove a duly appointed investment expert member prior to the expiration of the officer's defined four-year term, we disagree with the magistrate's statement that there is no statutory or constitutional authority *denying* Governor DeWine that authority.

{¶ 30} As explained above, R.C. 3307.05(C) defines the governor's authority to appoint an investment expert to the STRS board, and it requires the appointment to be for a four-year term. " 'The power of appointment, once exercised, is exhausted until a new vacancy occurs.' " *State ex rel. Norman v. Viebranz*, 19 Ohio St.3d 146, 147 (1985), quoting *State ex rel. Gahl v. Lutz*, 132 Ohio St. 466, 471 (1937). Once the governor has appointed

an investment expert to the STRS board, the governor's appointment power is exhausted until the appointed officer's term expires or a vacancy in the office occurs. *Id.*, citing *Gahl* at 471, citing Mechem, *Public Offices and Officers*, Section 113, at 46 (when the power to appoint an officer has been exercised, a subsequent appointment to the same office will be void unless the incumbent has been removed or the office has become vacant). Inasmuch as we have concluded that a governor appointed investment expert STRS board member does not serve at the pleasure of the governor, we conclude that R.C. 3307.05(C) itself precludes the governor from unilaterally removing the appointee before the conclusion of the term of office, to create a vacancy in the office. Accordingly, we modify the framing of the issue in the magistrate's decision to eliminate the suggestion that there is no statutory authority precluding the governor's removal of Steen from the STRS board. In all other respects, we agree with and adopt the magistrate's decision, including the findings of facts and conclusions of law contained therein.

## IV. CONCLUSION

{¶ 31} As explained above, we overrule Perera's objections to the magistrate's decision, and we adopt the magistrate's decision, including the findings of facts and conclusions of law therein, as modified. Accordingly, we grant Steen's motion for summary judgment, and issue a writ of quo warranto ousting Perera from the office of the governor's appointed investment expert member of the STRS board and reinstating Steen to that office, to which he has established a clear legal right.

*Objections overruled*;
*motion for summary judgment granted*;
*writ of quo warranto granted.*

EDELSTEIN and LELAND, JJ., concur.

———————————————

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Wade Steen, | : | |
| Relator, | : | |
| v. | : | No. 23AP-351 |
| G. Brent Bishop, Qualitate QUA Disputed Board Member State Teachers Retirement Board et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on February 6, 2024

*The Law Office of Norman A. Abood*, *Norman A. Abood*, and *Tyler J. Lantzsch*, for relator.

*Dave Yost*, Attorney General, and *Perez Morris LLC, Kevin L. Murch*, *Juan Jose Perez*, and *Paul Neel*, for respondent G. Brent Bishop.

IN WRIT QUO WARRANTO
ON MOTIONS

**{¶ 32}** Relator, Wade Steen, has filed this original action seeking a writ of quo warranto against respondents G. Brent Bishop, Carol Correthers, Dale Price, Alison Lanza Falls, State Teachers Retirement Board ("the board" or "STRS board"), Rudy H. Fichtenbaum, Steven Foreman, Claudia Herrington, Elizabeth Jones, Arthur Lard, Julie Sellers, Stephanie K. Siddens, and Mike DeWine (sometimes "the governor") seeking an order for the following relief: (1) Bishop be required to show by what warrant he holds the office of the Governor of Ohio's appointed investment expert member of the board; (2) DeWine be required to show upon what authority he based his removal of relator from the

office of the Governor of Ohio's appointed investment expert member of the board; (3) DeWine be required to show upon what authority he based his appointment of Bishop to the office of the Governor of Ohio's appointed investment expert member of the board; (4) the board be required to show upon what authority they based their removal of relator from the office of the Governor of Ohio's appointed investment expert member of the board; (5) the board be required to show upon what authority it bases its recognition of Bishop as the proper holder of the office of the Governor of Ohio's appointed investment expert member of the board; (6) Bishop be ousted from the office of the Governor of Ohio's appointed investment expert member of the board; (7) relator be given immediate possession of the office of the Governor of Ohio's appointed investment expert member of the board with all rights and privileges and emoluments thereof; (8) relator recover his costs; and (9) relator be awarded such other and further relief as the court deems just or equitable.

{¶ 33} Respondents DeWine, Correthers, Price, Lanza Falls, Fichtenbaum, Foreman, Herrington, Jones, Lard, Sellers, and Siddens have been dismissed as parties to the action, leaving Bishop as the only remaining respondent.

Relator has filed a motion for summary judgment.

Bishop has filed a motion for judgment on the pleadings.

Findings of Fact:

{¶ 34} 1. Relator was appointed, pursuant to R.C. 3307.05(C), by former Governor John Kasich as an investment expert member of the board, which governs the State Teachers Retirement System of Ohio ("STRS"). R.C. 3307.05(C) provides that the investment expert members of the board "shall be appointed for four-year terms."

{¶ 35} 2. DeWine is the current governor of Ohio. DeWine reappointed relator for a term beginning November 25, 2020, and ending September 27, 2024.

{¶ 36} 3. On May 5, 2023, DeWine announced he was removing relator from the board and appointing Bishop to replace relator.

{¶ 37} 4. Correthers, Price, Lanza Falls, Fichtenbaum, Foreman, Herrington, Jones, Lard, Sellers, and Siddens are all board members (collectively "board members").

{¶ 38} 5. On June 8, 2023, relator filed the instant complaint for writ in quo warranto, against DeWine, the board members, and the board, seeking an order for the

following relief: (1) Bishop be required to show by what warrant he holds the office of the Governor of Ohio's appointed investment expert member of the board; (2) DeWine be required to show upon what authority he based his removal of relator from the office of the Governor of Ohio's appointed investment expert member of the board; (3) DeWine be required to show upon what authority he based his appointment of Bishop to the office of the Governor of Ohio's appointed investment expert member of the board; (4) the board be required to show upon what authority they based their removal of relator from the office of the Governor of Ohio's appointed investment expert member of the board; (5) the board be required to show upon what authority it bases its recognition of Bishop as the proper holder of the office of the Governor of Ohio's appointed investment expert member of the board; (6) Bishop be ousted from the office of the Governor of Ohio's appointed investment expert member of the board; (7) relator be given immediate possession of the office of the Governor of Ohio's appointed investment expert member of the board with all rights and privileges and emoluments thereof; (8) relator recover his costs; and (9) relator be awarded such other and further relief as the court deems just or equitable.

{¶ 39} 6. On June 26, 2023, relator filed a motion for immediate ancillary injunctive relief.

{¶ 40} 7. On June 30, 2023, relator filed a motion for expedited hearing on his motion for immediate ancillary injunctive relief.

{¶ 41} 8. On July 10, 2023, DeWine filed a memorandum in opposition to relator's motion for immediate ancillary injunctive relief and a memorandum in opposition to relator's motion for expedited hearing.

{¶ 42} 9. On July 10, 2023, the board members filed a memorandum in opposition to relator's motion for immediate ancillary injunctive relief.

{¶ 43} 10. On July 10, 2023, respondents Correthers, Price, Lanza Falls, Fichtenbaum, Foreman, Herrington, Jones, Lard, Sellers, and Siddens filed a motion to dismiss them as parties to the action, pursuant to Civ.R. 12(B)(1) and (6).

{¶ 44} 11. On July 13, 2023, relator filed a reply in support of motion for immediate ancillary injunctive relief.

{¶ 45} 12. On August 1, 2023, the magistrate filed an order that denied relator's motion for immediate ancillary injunctive relief and motion for expedited hearing on his motion for immediate ancillary injunctive relief.

{¶ 46} 13. On August 7, 2023, relator filed a motion for summary judgment.

{¶ 47} 14. On August 14, 2023, the magistrate filed an order that granted the July 10, 2023, motion to dismiss filed by Correthers, Price, Lanza Falls, Fichtenbaum, Foreman, Herrington, Jones, Lard, Sellers, and Siddens.

{¶ 48} 15. On September 5, 2023, DeWine filed a motion for judgment on the pleadings, seeking dismissal as a party to the case. Also on September 5, 2023, DeWine filed a response in opposition to relator's motion for summary judgment.

{¶ 49} 16. On September 15, 2023, Bishop filed a response in opposition to relator's motion for summary judgment, incorporating by reference DeWine's arguments as set forth in DeWine's response in opposition to relator's motion for summary judgment.

{¶ 50} 17. On September 18, 2023, relator filed a response in opposition to DeWine's motion for judgment on the pleadings.

{¶ 51} 18. On September 22, 2023, relator filed a reply to Bishop's opposition to relator's motion for summary judgment.

{¶ 52} 19. On September 25, 2023, DeWine filed a reply in support of motion for judgment on the pleadings.

{¶ 53} 20. On September 29, 2023, DeWine filed a motion for leave to file instanter sur-reply in opposition to relator's motion for summary judgment.

{¶ 54} 21. On October 3, 2023, relator filed a combined motion to strike and memorandum in opposition to DeWine's motion for leave to file instanter sur-reply.

{¶ 55} 22. On October 27, 2023, the magistrate granted DeWine's motion for judgment on the pleadings and dismissed DeWine as a party.

{¶ 56} 23. On November 17, 2023, Bishop filed a motion for judgment on the pleadings.

{¶ 57} 24. On November 27, 2023, relator filed a response in opposition to Bishop's motion to dismiss.

{¶ 58} 25. On December 4, 2023, Bishop filed a reply in support of motion for judgment on the pleadings.

Conclusions of Law and Discussion:

{¶ 59} The magistrate recommends that this court grant relator's motion for summary judgment.

{¶ 60} R.C. 2733.01(A) provides, in pertinent part, that a civil action in quo warranto may be brought in the name of the state "[a]gainst a person who usurps, intrudes into, or unlawfully holds or exercises a public office, civil or military, or a franchise, within this state, or an office in a corporation created by the authority of this state[.]" R.C. 2733.06 provides that, "[a] person claiming to be entitled to a public office unlawfully held and exercised by another may bring an action therefor by himself or an attorney at law, upon giving security for costs."

{¶ 61} Quo warranto is the exclusive remedy to litigate the right of a person to hold a public office. *State ex rel. Deiter v. McGuire*, 119 Ohio St.3d 384, 2008-Ohio-4536, ¶ 20; *see also, State ex rel. Ebbing v. Ricketts*, 133 Ohio St.3d 339, 2012-Ohio-4699, ¶ 8, citing *State ex rel. Johnson v. Richardson*, 131 Ohio St.3d 120, 2012-Ohio-57, ¶ 15. In quo warranto, judgment may be rendered on the right of the defendant to hold the contested office and the right of the person alleged to be entitled to hold the office. *Deiter* at ¶ 22.

{¶ 62} A writ of quo warranto is a high prerogative writ of an extraordinary nature. *State ex rel. Cain v. Kay*, 38 Ohio St.2d 15, 16 (1974). To be entitled to the writ of quo warranto, the relator must establish that the office is being unlawfully held and exercised by respondent and that the relator is entitled to the office. In other words, the relator must demonstrate not only that he is entitled to the office but also demonstrate that the claimed office is unlawfully held and exercised by the respondent. *State ex rel. Halak v. Cebula*, 49 Ohio St.2d 291 (1977); *State ex rel. Smith v. Nazor*, 135 Ohio St. 364 (1939). The relator is obligated to show clear legal right to the claimed office. *State ex rel. Corrigan v. Noble*, 26 Ohio St.3d 84, 86 (1986), citing *State ex rel. Joecken v. Lynch*, 123 Ohio St. 676 (1931), and *Cain* at 17. *See also State ex rel. Buian v. Kadlec*, 56 Ohio St.2d 116, 118 (1978) (a writ of quo warranto issues only where there is a clear legal right to the relief requested).

{¶ 63} Pursuant to Civ.R. 56(C), summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 64} Pursuant to Civ.R. 12(C), "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." A court

considering a motion under Civ.R. 12(C) must construe the material allegations in the complaint and all reasonable inferences to be drawn by the same in favor of the nonmoving party as true. *Ohio Mfrs.' Assn. v. Ohioans for Drug Price Relief Act*, 147 Ohio St.3d 42, 2016-Ohio-3038, ¶ 10. Viewing the allegations in such light, the court may only grant a motion under Civ.R. 12(C) where it finds no material factual issues exist and the movant is entitled to judgment as a matter of law. *Hinkle v. L Brands, Inc. World Headquarters*, 10th Dist. No. 21AP-80, 2021-Ohio-4187, ¶ 9. Thus, a motion under Civ.R. 12(C) " 'tests the allegations of the complaint and presents a question of law.' " *Jackson v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 19AP-621, 2020-Ohio-1518, ¶ 11, quoting *Zhelezny v. Olesh*, 10th Dist. No. 12AP-681, 2013-Ohio-4337, ¶ 9. A court is permitted to consider both the complaint and answer in resolving the question of law presented by a Civ.R. 12(C) motion. *Lytal v. Crawl for Cancer, Inc.*, 10th Dist. No. 17AP-771, 2018-Ohio-2017, ¶ 8, citing *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570 (1996), citing *Peterson v. Teodosio*, 34 Ohio St.2d 161, 166 (1973).

{¶ 65} The primary goal of statutory interpretation is to determine and uphold "the General Assembly's intent in enacting the statute." *Knollman-Wade Holdings, LLC v. Platinum Ridge Properties, LLC*, 10th Dist. No. 14AP-595, 2015-Ohio-1619, ¶ 14. "In determining legislative intent, we must first look to the plain language of the statute." *Id.* As a general rule, the words and phrases of a statute will be read in context and construed according to the rules of grammar and common usage. R.C. 1.42. *See In re Acubens, LLC*, 10th Dist. No. 17AP-870, 2018-Ohio-2607, ¶ 14, citing *State ex rel. Rose v. Lorain Cty. Bd. of Elections*, 90 Ohio St.3d 229, 231 (2000). Where the language of a statute is plain and conveys a clear and definite meaning, there is no need for statutory interpretation. *State v. Banks*, 10th Dist. No. 11AP-69, 2011-Ohio-4252, ¶ 13. "If the [statute] is clear and unambiguous, as it is in this case, we must apply it as written." *State v. Ashcraft*, 171 Ohio St.3d 747, 2022-Ohio-4611, ¶ 7. We may look beyond the plain statutory language only when a definitive meaning remains elusive despite a thorough, objective examination of the language. *Ohio Neighborhood Fin., Inc. v. Scott*, 139 Ohio St.3d 536, 2014-Ohio-2440, ¶ 23, citing *State v. Porterfield*, 106 Ohio St.3d 5, 2005-Ohio-3095, ¶ 11.

R.C. 3307.05(C) provides, in pertinent part:

The state teachers retirement board shall consist of the following members:

* * *

(C) Two members, known as the investment expert members, who shall be appointed for four-year terms. One investment expert member shall be appointed by the governor, and one investment expert member shall be jointly appointed by the speaker of the house of representatives and the president of the senate. * * *

* * *

Any investment expert member appointed to fill a vacancy occurring prior to the expiration of the term for which the member's predecessor was appointed shall hold office until the end of such term. The member shall continue in office subsequent to the expiration date of the member's term until the member's successor takes office, or until a period of sixty days has elapsed, whichever occurs first.

{¶ 66} R.C. 3307.061, provides the type of convictions that result in the loss of office for an STRS board member; the circumstances under which the office of an STRS board member will be deemed vacant; the bases under which forfeiture of the office of an STRS board member will occur; the procedure for removal from office of an STRS board member; and the appellate rights for an STRS board member that has been removed from office under the section. Nothing in R.C. 3307.061 authorizes the governor of Ohio to remove the investment expert member appointed by the governor.

Ohio Constitution, Article III, Section 38 ("Section 38") provides:

Laws shall be passed providing for the prompt removal from office, upon complaint and hearing, of all officers, including state officers, judges and members of the general assembly, for any misconduct involving moral turpitude or for other cause provided by law; and this method of removal shall be in addition to impeachment or other method of removal authorized by the constitution.

{¶ 67} In the present case, relator presents the following arguments in favor of summary judgment: (1) The "Proceedings and Debates of the Constitutional Convention of the State of Ohio – 1912" ("1912 Proc."), which documents the impetus and debate surrounding Ohio Constitution, Section 38, demonstrates that the members of the convention did not view the supreme executive power conferred upon the governor by the Ohio Constitution, Article III, Section 5 to include the ability to dismiss officials from term

appointments at his pleasure: (a) Section 38 reflects the convention members' view, as set forth in 1912 Proc., that when a man is elected or appointed to an office he has a property right in the office, and he has a right to discharge the duties of that office and receive emoluments until his term expires; (b) 1912 Proc. reveals that the convention members rejected the notion that if a man has a right to choose a man for his service, he has a right to reject him when he thinks he is not properly performing his duty, and the members intended a process for removing public officials that takes out of the hands of the governor all discretionary power; (2) where the term of an appointed office if established by statute, the appointment is for a fixed term, and in the case of a governor's appointment pursuant to statute, *State ex rel. McCormick v. Raschig*, 147 Ohio St. 522, 529 (1947), provides that the governor has no power to make an appointment for a term of either less than or more than the term set forth by statute; (3) the plain language of R.C. 3307.05(C) provides that an investment expert member of the board serves a term of office of four years; (4) if the appointment was at the pleasure of the governor, the investment expert member would be nothing more than the governor's puppet, subject to removal at any time should he not please the governor or follow his every whim; (5) R.C. 3307.061 defines the grounds and due process procedures governing removal of the governor's appointed STRS board member, and, given this statutory enumeration of the various grounds for removal, the power of removal on some other basis is excluded; (6) there is no basis for statutory removal of relator from the STRS board under R.C. 3307.061; (7) the Ohio Revised Code does not provide that the governor's investment expert member of the board serves at the pleasure of the board, does not provide that the governor's power to appoint an investment expert member to the board is subject to the advice and consent of the Ohio Senate, does not provide the governor with power to reduce the term of the governor's investment expert member of the board, and does not provide the governor with the power to appoint a board member for less than a four-year term; (8) in *State ex rel. Norman v. Viebranz*, 19 Ohio St.3d 146 (1985), which involves an aggrieved school board member seeking reinstatement after her replacement was appointed before her term had expired, the Supreme Court of Ohio held that where the power has been given to appoint to an office and the same has been exercised, any subsequent appointment to the same office will be void unless the prior incumbent has been removed or the office has otherwise become vacant; and (9) in Atty. Gen. Op. No. 2014-016, then-Ohio Attorney General DeWine opined that: (a) pursuant to

Section 38, a public officer can only be removed from office upon complaint and a hearing, i.e., in accord with due process of law; (b) if the General Assembly had intended a board of education to have authority to remove a member of a board of trustees of a school district free public library from office, it could have used language similar to that used in other statutes governing the appointment of public offices; and (c) the general rule allowing an implied power of removal as incident to the power of appointment does not apply when the appointee serves a term that is fixed by law, or removal of the appointee is governed by constitutional or statutory provision.

{¶ 68} Bishop presents the following arguments in favor of judgment on the pleadings: (1) Ohio Constitution, Article III, Section 5, vests the governor with the supreme executive power of the state and empowers the governor to act in the interest of the state and in ways not specified, so long as his actions do not contravene the Constitution or violate laws passed by the legislature within its constitutional authority, citing *State ex rel. AFSCME v. Taft*, 156 Ohio App.3d 37, 2004-Ohio-493; (2) DeWine's revocation of relator's appointment does not contravene the constitution or violate any laws passed by the legislature; (3) relator cites no Ohio Revised Code provision that clearly prohibits DeWine from revoking relator's appointment to the board; (4) relator cites no provision of the Ohio Constitution that clearly prevents DeWine from exercising the authority to revoke his appointment of relator to the board; (5) the failure of the Ohio Revised Code to expressly grant DeWine the authority to revoke an appointment to the board is not the same as prohibiting or denying such authority; (6) even if the Ohio Revised Code does not specifically grant the governor the power to remove or revoke his appointee to the board, the governor still has the inherent authority to do so through common law and the office's constitutional authority; (7) relator cannot show he has a clear legal right to be reinstated on the board; (8) relator cannot show that the removal process in R.C. 3307.061 provides the sole and exclusive means for removal of the governor's appointees; and (9) the Supreme Court has found that the power of removal is regarded as incident to the power of appointment in *State ex rel. Minor v. Eschen*, 74 Ohio St.3d 134 (1995).

{¶ 69} Essentially, the arguments presented by the parties in the present case reduce down to the following issue: Given the lack of any express statutory or Constitutional authority granting or denying DeWine the power to remove an investment expert member he appointed to the investment board prior to the expiration of the investment expert

member's statutory four-year term, does DeWine have the inherent authority to do so? Bishop does not contend there is express statutory or Constitutional authority granted to DeWine to remove relator from the board, and relator does not point to any express statutory or Constitutional authority prohibiting DeWine from removing relator from the board.

{¶ 70} After reviewing the competing arguments in relator's motion for summary judgment and Bishop's motion for judgment on the pleadings, the magistrate finds relator is entitled to summary judgment. There are no material facts in dispute, and reasonable minds can only come to one conclusion that is adverse to Bishop. The analysis begins with the fundamental tenet that the governor of Ohio holds the "supreme executive power of this state." Article III, Section 5. This section of the Ohio Constitution vests in the governor broad executive authority over actions of state agencies. *AFSCME* at ¶ 48. "Although the phrase 'executive power' has not been specifically defined, it appears to be firmly established in Ohio law that the Governor not only has the powers necessary to perform the duties specifically required of him by the Constitution and statutes, but he is also empowered to act in the interest of the state and in ways not specified, so long as his actions do not contravene the Constitution or violate laws passed by the legislature within its constitutional authority." *Id.* at ¶ 49, citing *State ex rel. S. Monroe & Son Co. v. Baker*, 112 Ohio St. 356, 371 (1925).

{¶ 71} The entire basis of Bishop's defense of DeWine's actions rests upon this notion that the governor had inherent constitutional authority to remove relator from the position to which the governor appointed him. However, Bishop cites no case law showing that the governor has ever before exercised such supposed inherent authority under analogous circumstances, and the magistrate can find none. Although this observation may be telling in itself, a legal analysis of the present scenario supports a finding that the governor does not have the inherent authority to remove an investment expert member he appointed to the board pursuant to R.C. 3307.05(C).

{¶ 72} Although relator makes numerous arguments in support of summary judgment, a few key arguments are dispositive. Relator argues that R.C. 3307.05(C) specifically designates the length of term of the governor's appointed investment expert member on the STRS board, and the governor is without authority to alter that term, citing *McCormick* at 147 Ohio St. 522. Bishop counters that the Supreme Court has found that the

power of removal is regarded as incident to the power of appointment, relying upon *Minor*. The magistrate finds *McCormick* persuasive. In *McCormick*, the governor appointed the respondent to the position of Superintendent of Public Works and Director of the Department of Public Works for a term to begin July 22, 1946, and to end January 1, 1947. Subsequently, the governor appointed the relator to the office of Superintendent of Public Works of Ohio and Director of the Department of Public Works for a term of one year beginning January 11, 1947. The respondent refused to surrender the office. The relator then filed a petition in quo warranto. The Supreme Court noted that Article VIII, Section 12, of the Ohio Constitution provides that the governor shall appoint a Superintendent of Public Works for the term of one year, and the pertinent statutory provisions provided that a Superintendent of Public Works shall be appointed by the governor and hold his office for a term of one year from the date of appointment and until his successor is duly qualified. The Supreme Court found that the governor had no power to make an appointment of a Superintendent of Public Works for a term of either less than or more than one year as required by statute, and the respondent was entitled to hold that appointed office from the date of appointment on July 22, 1946, for a term of one year commencing on said date and that there was no vacancy in the office of Superintendent of Public Works on January 11, 1947. Thus, the court dismissed the relator's petition.

{¶ 73} Here, R.C. 3307.05(C) specifically provides the governor shall appoint one investment expert member to a four-year term. Applying *McCormick* to the present case, the governor had no power to make an appointment of an investment expert member to the board for a term of either less than or more than four years. DeWine appointed relator to a term beginning November 25, 2020, and ending September 27, 2024, and relator was entitled to hold that appointed office for that four-year term. Therefore, there was no vacancy for the governor-appointed investment expert member on the board on May 5, 2023, the date DeWine announced he was appointing Bishop to replace relator. Accordingly, relator is entitled to in quo warranto relief because he has shown that he is entitled to the appointed office and that the respondent is unlawfully holding the office. *See Norman* at 19 Ohio St.3d 147 (finding that the power of appointment, once exercised, is exhausted until a new vacancy occurs; where power has been given to appoint to an office and the same has been exercised, any subsequent appointment to the same office will be

void unless the prior incumbent has been removed or the office has otherwise become vacant).

{¶ 74} Bishop's reliance upon *Minor* is unfounded. Bishop cites *Minor* for the proposition that "the power of removal is regarded as incident to the power of appointment." *Id.* at 139. However, the general rule referred to in *Minor*, is more fully explained in 43 American Jurisprudence, 31, Section 183, as follows:

> "When the terms or tenure of a public officer is not fixed by law, and the removal is not governed by constitutional or statutory provision, the general rule is that the power of removal is incident to the power to appoint. Inasmuch as the tenure has not been declared by law, the office is held during the pleasure of the authority making the appointment, and no formal charges or hearings are required in the absence of some statute on the subject. * * *"

*Davidson v. Sheffield-Sheffield Lake Bd. of Edn.*, 9th Dist. No. 89CA004624 (1990), quoting 43 American Jurisprudence, 31, Section 183. Thus, the general rule that the power of removal is regarded as incident to the power of appointment is only applicable when "the terms or tenure of a public officer is not fixed by law, and the removal is not governed by constitutional or statutory provision[.]" In the present case, the term of the governor-appointed investment expert member is fixed by the General Assembly at four years pursuant to R.C. 3307.05(C), and the removal is governed specifically by the requirements set forth in R.C. 3307.061 and Ohio Constitution, Article II, Section 38.

{¶ 75} Furthermore, Bishop's arguments necessarily advocate that the governor's investment expert member appointees under R.C. 3307.05(C) serve at the pleasure of the governor. However, there is no express statutory or Constitutional authority to support such a claim and to conclude that the governor has an inherent Constitutional authority to remove an investment expert member flies in the face of the specific statutory language that sets forth the terms-of-office and removal procedure for board members. If the legislature had intended to have the governor-appointed investment expert members serve at the governor's pleasure, it clearly knew how to draft such a provision and would have provided for such. *See, e.g., AFSCME* at ¶ 35 (pursuant to R.C. 121.03(Q), the director of the Ohio Department of Rehabilitation and Correction is appointed by the governor, with the advice and consent of the senate, and shall hold his office during the term of the appointing governor, and is subject to removal at the pleasure of the governor); *State ex rel. Ohio*

*Roundtable v. Taft*, 10th Dist. No. 02AP-911, 2003-Ohio-3340, ¶ 25 (the lottery director is a member of the governor's cabinet, serving at the pleasure of the governor pursuant to R.C. 3770.02(A)). The plain language in R.C. 3307.05(C) and 3307.061 is clear and unambiguous, and those statutes set forth a four-year term for the governor-appointed investment expert member and the requirements for removal of the investment expert member. The absence of any statutory or constitutional provision granting the governor authority to end the term before its statutory expiration and remove the investment expert member at his pleasure, when the legislature knew how to include and could have included such language, supports the conclusion that the governor was not intended to have this authority. *See, e.g., State v. Nicholas*, 171 Ohio St.3d 278, 2022-Ohio-4276, ¶ 29-30 (finding if the General Assembly had it wanted to specify a clear and convincing standard, it would have done so, as it has done in many statutes in the Ohio Revised Code).

**{¶ 76}** For the foregoing reasons, the magistrate finds that relator has demonstrated there is no genuine issue of material fact remaining; reasonable minds can only conclude the governor lacked the statutory, Constitutional, or inherent authority to remove relator from his position as investment expert member for the board; and relator is entitled to a writ for in quo warranto as a matter of law.

**{¶ 77}** In his petition, relator has prayed for Bishop's ouster from the office and reimbursement of the costs incurred in pursuing this action in quo warranto. R.C. 2733.14 provides, "[w]hen a defendant in an action in quo warranto is found guilty of usurping, intruding into, or unlawfully holding or exercising an office, franchise, or privilege, judgment shall be rendered that he be ousted and excluded therefrom, and that the relator recover his costs." Therefore, respondent Bishop is ousted as the governor-appointed investment expert member of the board, and relator is reinstated into the position as the governor-appointed investment expert member of the board. Relator is entitled to the costs incurred in having to bring this action.

**{¶ 78}** Accordingly, it is the magistrate's decision that this court should grant relator's motion for summary judgment, deny as moot all other pending motions, and grant relator's petition for writ in quo warranto.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.